JUDGE BRICCETTI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

PAUL CAMPBELL

      Plaintiff,

      v.

BANK OF AMERICA, NATIONAL ASSOCIATION;

BAC HOME LOAN SERVICING, L.P. as successor in interest to COUNTRYWIDE HOME LOANS SERVICING, L.P.;

COUNTRYWIDE HOME LOANS INC.;

FEDERAL NATIONAL MORTGAGE ASSOCIATION;

SELENE FINANCE LP;

U.S. BANK NATIONAL ASSOCIATION, individually and as trustee of SW REMIC TRUST 2015;

ROSICKI, ROSICKI & ASSOCIATES, P.C.; and

SHAPIRO, DICARO, & BARAK, LLC

      Defendant

CIVIL ACTION NO.:

*Civil Action*

# 19 CV 00011

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Paul Campbell, appearing pro se, hereby submits this Complaint against Defendants, and in support thereof, states as follows:

## NATURE OF ACTION

This action arises from the Plaintiff's pursuit of $100,000,000.00 in compensatory and punitive damages (where applicable) due and owing from Defendants, and arising from Plaintiff

1

being fraudulently induced into signing, paying monies towards, and enduring an eleven year unlawful state assisted foreclosure debt collection action involving the attempted theft of Plaintiff's real property encumbered by a fraud *in factum*, unconscionable, and predatory (per se) transaction consisting of: (1) two falsely made paper promissory note instruments; (2) two forged – stolen – unlawfully converted electronic promissory note instruments; (3) two falsely made security instruments pledging Plaintiff's real property in pursuant to an unlawful debt; and (4) an undisclosed securities transaction using the aforementioned electronic promissory notes and the Plaintiff's collateral.  Hence, the Plaintiff avers that the Defendants, at all relevant times knew - should have known - and or concealed from the Plaintiff the truth as it pertains to the transaction complained of herein.

The Plaintiff further avers that the Defendants, aided and abetted by local foreclosure counsel who are officers of the court acting in the capacity of third-party debt collectors for the fraud *in factum* – unlawful transaction complained of herein, illegally commenced and prosecuted a foreclosure debt collection action using the New York State assisted procedures by employing the use of misrepresentations and concealment of facts, perjured certifications, and false – forged evidence, all of which arises to tampering with the administration of justice during official proceedings.

Furthermore, the Defendants and their non-party affiliates, at all relevant times, constitute an enterprise using the mail and wire interstate, each committing at least two predicate acts over the past ten years which has injured the Plaintiff in his property that also provides rental income.

Lastly, the Plaintiff's claims made herein: (1) are independent of the state court action for which Plaintiff is not seeking appellate review by this Court in order to overcome any defense of *Rooker-Feldman*; (2) defeat any defense of *Res Judicata* due to the tampering with and fabricating

2

of evidence in the state court matter; and (3) should be tolled wherein the statute of limitations would normally apply due to the discovery rule and continuous acts of fraud.

## PARTIES

1.       Plaintiff, Paul Campbell ("Mr. Campbell"), residing at 420 S. 4th Avenue, Mount Vernon, New York 10550 ("subject property"), the property subject of the complaint herein that is encumbered by a security instrument which, upon Plaintiff's information and belief, arises from the transaction complained of herein that is fraud *in factum*, unconscionable, predatory (per se), and unenforceable under state, federal, and common law for the matters of fact set forth below.

2.       Upon information and belief, Defendant Bank of America, National Association ("BANA") is a privately held subsidiary of non-party to this complaint Bank of America Corporation ("BOA-Co"), and a national banking association formed under the laws of the United States.

3.       Upon information and belief, Defendant BANA is the successor of Defendant BAC Home Loans Servicing, LP ("BAC") by merger to Defendant Countrywide Home Loans Servicing, LP ("CHLS"), and the successor of non-party to this complaint Countrywide Bank, National Association ("Countrywide Bank").  Upon information and belief, Defendant Countrywide Home Loans, Inc. ("CHL") is a New York corporation with its principal place of business in Calabasas, CA, a privately held subsidiary of non-party to this complaint BOA-Co, and CHL transacts or has transacted business in this district.  Defendants BANA, BAC, CHLS, and CHL may be served with process of this court upon Brian T. Moynihan as Chief Executive Officer ("CEO") of BOA-Co, or upon any officer or authorized agent at Defendant's principal place of business located at 100 N. Tryon St., Charlotte, NC, 28255.

4.      Upon information and belief, Defendant Federal National Mortgage Association ("Fannie Mae") is a government-sponsored enterprise ("GSE") under the conservatorship of non-party to this action, the Federal Housing Finance Agency ("FHFA"), that was established in the year 1938. In the year 1954, the United States Congress passed the Federal National Mortgage Association Charter Act which converted the Defendant into a public-private, mixed ownership corporation, until the year 1968, when Fannie Mae became entirely privately owned. Today, the Defendant advertises that it primary function within the residential mortgage business includes the purchasing of residential mortgages on the secondary market, wherein Fannie Mae purportedly retains some mortgage loans in its portfolio of investments, and the majority of the loans are securitized by collecting a group of similar home mortgage loans (called a pool of loans), then issuing securities (called mortgage-backed securities) that represent an ownership interest in the pool of loans. Defendant may be served with process of this court upon Timothy J. Mayopoulos as CEO, or upon any officer or authorized agent at Defendant's principal place of business located at 3900 Wisconsin Avenue, N.W., Washington, D.C., 20016.

5.      Upon information and belief, Defendant Selene Finance LP (Selene) is a company organized and existing pursuant to the rules and laws of Texas, whose primary business is servicing (i.e. debt collection) for "residential mortgage loans" in the State of New Jersey. Defendant may be served with process of this court upon Joseph A. Pensabene as CEO or upon any officer or authorized agent at Defendant's principal place of business located at 9990 Richmond Avenue, Suite 400, Houston, TX 77042.

6.      Upon information and belief, Defendant U.S. Bank National Association ("US Bank") in its individual capacity is a national banking association formed under the laws of the United States that, directly or indirectly through its agents, is acting as Trustee of SW REMIC

4

Trust 2015 ("SW REMIC Trust 2015"). Defendant may be served with process of this court upon Andrew J. Cecere as CEO or upon any officer or authorized agent at Defendant's principal place of business located at 425 Walnut Street, Cincinnati, OH 45202-3923.

7.      Upon information and belief, the aforementioned Defendants ¶¶2-6 are either members of non-party MERSCORP Holdings, Inc. f/k/a MERSCORP Inc. ("MERSCORP"), or in the alternative non-members, giving them direct or in-direct access and use of MERSCORP's wholly-owned subsidiaries Mortgage Electronic Registration Systems, Inc. ("MERS") and services through the MERS® System, MERS® eRegistry, and MERS® Servicer ID.

8.      Upon information and belief, Defendant ROSICKI, ROSICKI & ASSOCIATES, P.C. ("RRA") is a professional corporation organized and existing pursuant to the rules and laws of New York, whose primary business is third-party debt collection and foreclosure of residential mortgage loans encumbering properties located in New York on behalf of mortgage servicers. Defendants may be served with process of this court upon Cynthia Rosicki as CEO or upon any officer or authorized agent at Defendant's principal place of business located at 51 East Bethpage Road, Plainview, NY 11803.

9.      Upon information and belief, Defendant SHAPIRO, DICARO & BARACK, LLC ("SDB") is a limited liability corporation organized, existing pursuant to the rules and laws of New York, and a member / affiliate of The LOGS Group, LLC network, whose primary business is third-party debt collection and foreclosure of residential mortgage loans encumbering properties located in New York on behalf of mortgage servicers. Defendants may be served with process of this court upon Gerald M. Shapiro as a managing partner or upon any officer or authorized agent at Defendant's principal place of business located at 175 Mile Crossing Boulevard, Rochester, NY 14624.

5

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as this matter involves federal claims arising under federal law, thereby invoking the Court's federal question jurisdiction.

11.     This Court has personal jurisdiction over Defendants, as Defendants have had the requisite minimum contacts with the State of New York and Defendants have and continue to regularly conduct business in the State of New York.

12.     Venue lies in the United States District Court for the Southern District of New York, as a substantial part of the property that is the subject of this action is located in the State of New York.

13.     Further, venue lies in the United States District Court for the District of New York, as a substantial part of the events or omissions upon which Plaintiff's claims are based has occurred in the State of New York.

## FACTS COMMON TO ALL COUNTS

14.     On November 17, 2006, Mr. Campbell entered into what he then believed was a traditional refinance mortgage loan consisting of two paper promissory notes and mortgage instruments (hereafter collectively referred to as the "1st mortgage loan" and "2nd mortgage loan"), requiring Mr. Campbell to pledge the subject property to American Broker Conduit ("ABC") as the party designated as the lender who suffered a real and actual loss of $512,000.00 and $128,000.00, wherein:

> a.  the 1st mortgage loan required 360 installments of principal and interest beginning January 1, 2007 until the maturity date on December 1, 2036;

    b. the 2nd mortgage loan required 180 installments of principle and interest beginning January 1, 2007 until the maturity date on December 1, 2021; and

    c. the security instrument subject of the instant matter was recorded by the Clerk for Westchester County, NY ("Westchester County Clerk") on February 21, 2007, and designates Mortgage Electronic Registration Systems, Inc. ("MERS") with a purported address at P.O. Box 2026, Flint Michigan 48501-2026, as the alleged mortgagee acting as the purported "nominee" for ABC and the latter's alleged "successors and assigns".

15.      Hence, as of the November 17, 2006 date assigned to the refinance mortgage loan in dispute, Mr. Campbell was not aware and recently discovered that:

    a. ABC, the party designated as the lender within the 1st and 2nd mortgage loans in dispute, was never an official entity registered with and licensed by the NYS Department of State – Division of Corporations ("NYS Division of Corporations"),[1] constituting a violation of NYCL General Business Law § 130.;

    b. as of the November 17, 2006 date assigned to the 1st and 2nd mortgage loans in dispute, ABC was a named used by the official entity "American Home Mortgage Corporation" ("AHMC") as a subsidiary of "American Home Mortgage Investment Corporation" ("AHMIC")[2].;

    c. as of the November 17, 2006 date assigned to the 1st and 2nd mortgage loans in dispute, neither AHMC or the latter's non-existing entity ABC that was

---

[1] See https://www.dos.ny.gov/corps/bus_entity_search.html (last checked December 19, 2018).

[2] See https://www.dos.ny.gov/corps/bus_entity_search.html (last checked December 19, 2018).

declared the lender that suffered a real and ascertainable loss $512,000.00 and $128,000.00 on November 17, 2006, were depository financial institutions capable of originating mortgage loans from their own reserves, and relied on table funded commitments supplied by third-party warehouse lenders[3] to originate mortgage loans as the purported "Lender" in name only.;

    d.   AHMC as the user of the non-existing entity ABC, the latter of whom is misrepresented to be the lender for the 1st and 2nd mortgage loans in dispute, omitted from those same instruments and concealed from Mr. Campbell the actual source for the $512,000.00 and $128,000.00 in dispute.;

    e.   AHMC as the user of the non-existing entity ABC, the latter of whom is misrepresented to be the lender for the 1st and 2nd mortgage loans in dispute, and as a member of non-party MERSCORP, illegally created two transferable records a/k/a eNotes ("electronic notes")[4] dated November 17, 2006, worth $512,000.00 and $128,000.00, each assigned eighteen (18) digit Mortgage

---

[3] Citing "*Real Estate Finance – Theory and Practice, Third Edition*" by Terence M. Clauretie of the University of Nevada, Las Vegas and G. Stacy Sirmans of Florida State University defining mortgage origination by mortgage bankers using "Warehouse Lending" as: "Mortgage Bankers have two principal sources of funds... A second source of funds for mortgage bankers is short-term loans from commercial banks; these are called warehouse loans. A mortgage banker will ask for a line-of-credit for, say, $2 million. The mortgage banker will agree to a compensating balance, usually 20 percent of the maximum line-of-credit. As mortgage loans are made from this line-of-credit, the mortgage banker will pledge those loans as collateral for the line-of-credit. That is, when the mortgage banker originates a mortgage for $100,000, he will simultaneously "take down" $100,000 of the $2 million line-of-credit and pledge the mortgage note for collateral. After the mortgage banker has originated $2 million in mortgages, he will sell them to an investor. The proceeds of the sale will pay off the line-of-credit at the commercial bank..." (*Id.* at Page 278).

[4] See N.J.S.A. 12A:9-105.

Continued on following page

Identification Numbers ("MINs"),[5] and registered on the MERS® eRegistry[6] using the aforementioned MIN's and Mr. Campbell's social security number ("SSN") without the Plaintiff's knowledge and/or consent,[7] and by forgery his electronic signatures upon the electronic notes because Mr. Campbell *never* (emphasis added) electronically signed the electronic notes himself as required by law[8].;

    f.   AHMC as the user of the non-existing entity ABC, the latter of whom is misrepresented to be the lender for the 1st and 2nd mortgage loans in dispute, converted Mr. Campbell from a "mortgagor" under Articles 3 and 9 of New York Uniform Commercial Code ("NY UCC") into a securities issuer to facilitate a securities transaction governed by Article 8 of NY UCC using the aforementioned forged – stolen electronic notes and Mr. Campbell's collateral to create and sale "Mortgage Backed Securities" ("MBS"), Collateralized Debt Obligations ("CDO"), and derivates[9].;

---

[5] See *"eNotes Speed. Security. Efficiency. The future of mortgage lending."* that used to be retrievable at https://www.mersinc.org/join-mers-docman/1182-mers-eregistry-online-brochure-2016-3/file (last checked Mar. 19, 2018), wherein page five of six states that a "MIN" ("Mortgage Identification Number") is "the unique identification number for a registered eNote" .

[6] See *What is the MERS® eRegistry?*" retrieved at https://mersinc.org/about/faq (last checked Dec. 19, 2018).

[7] See Uniform Electronic Transactions Act ("UETA") (See 15 U.S.C. § 7021. UETA §16).;

[8] Electronic Signatures in Global and National Commerce Act ("ESIGN") (See 15 U.S.C. § 7001 et seq.).

[9] For a general description and discussion of the derivatives market, *see generally* S. Das, Swap & Derivative Financing - The Global Reference to Products, Pricing, Applications and Markets 3-36 (1993). See also *"Derivatives And Rehypothecation Failure It's 3:00 p.m., Do You Know Where Your Collateral Is?."* by Christian A. Johnson  Assistant Professor of Law, Loyola University Chicago School of Law. B.A.; MPrA, Utah; J.D., Columbia, 1990

Continued on following page

g.  the fraud *in factum* paper notes secured by the aforementioned mortgage liens

and enforcement thereof by any purported successors and assigns of the non-

existing entity ABC were, at all relevant times, made pursuant to NY UCC § 9-

203, and were never negotiable instruments made pursuant to NY UCC (See

NY UCC § 3-104).[10]; and

h.  despite MERS' designation within the 1st and 2nd "mortgage" instruments in

dispute as the "mortgagee" acting as the purported "nominee" for a non-existing

entity ("American Brokers Conduit") and the latter's undisclosed successors

and assigns, MERS: (i) never extended credit or loaned its monies to the

Plaintiff;[11] (ii) never took an economical or beneficial interest in the "mortgage

loan" in dispute;[12] (iii) was contractually prohibited from taking any action on

---

[10] For instant, Section 5 from the 1st note in dispute sets forth "Loan Charges" consisting of terms and conditions which do not guarantee a specific amount due upon the note, a requirement in order for a note to be deemed a negotiable instrument pursuant to NY UCC § 3-104. See also Felin Assocs., Inc. v. Rogers, 38 A.D.2d 6, 9 (N.Y. App. Div. 1971) ("It is quite apparent that a note given in a real estate transaction in connection with a mortgage does not fall into the classification of a negotiable instrument. Certainly, absent affirmative proof this court is not and should not be required to presume that the note was negotiable.") (citing Wright v. Wright, 54 N.Y. 437, 441 (1873); Peterson v. Meyer, 105 Misc. 719, 721 (Cnty. Ct. of N.Y. 1919)); Am. Bank of the S. v. Rothenberg, 598 So. 2d 289, 291 (Fla. Dist. Ct. App. 1992); Ingram v. Earthman, 993 S.W.2d 611, 623-24 (Tenn. Ct. App. 1998) ("If there is any doubt that an instrument is negotiable, the courts generally find that it is nonnegotiable.").

[11] See MERS' Appellant brief filed on October 15, 2004 in Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent (A-04-000786) (Id. at 22).; see also the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005); see also the February 11, 2011 *Certification of Mortgage Electronic Registration Systems, Inc. In Response to Administrative Order 01-2010* filed with the N.J. Sup. Ct. (Docket No.: F-238-11) wherein MERS declared in relevant part that: "MERS is not a mortgage servicer, *nor does MERS own beneficial interests in promissory notes*." (Id. at ¶9).

[12] See MERS' Appellant brief filed on October 15, 2004 in Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent (A-04-000786) (Id. at 11-13, 20, and 22); see also the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005); see also the February 11, 2011 *Certification of Mortgage Electronic Registration Systems, Inc. In Response to Administrative Order 01-2010* filed with the N.J. Sup. Ct. (Docket

Continued on following page

the "mortgage loan" including, but not limited to, foreclosure and or assignment;[13] and (iv) never acted as a document custodian with physical possession of the "mortgage loan".[14]

Furthermore, despite MERS' designation within the aforementioned 1st and 2nd "mortgage" instruments as the purported "nominee" for ABC, and the latter's undisclosed successors and assigns, Mr. Campbell avers that he was never presented with a power of attorney before, on, or after the November 17, 2006 date assigned to the mortgage instruments proving MERS' alleged agent status and the authorities vested in MERS by its purported principal ABC, the same was never submitted for recording with the Westchester County Clerk and remains unrecorded to present date. Additionally, upon Mr. Campbell's knowledge and belief, AHMC as the user of the non-existing entity ABC, or AHMC's successors and assigns, willfully destroyed the original paper notes[15] for the 1st and 2nd mortgage loans in dispute upon creating the aforementioned illegally forged – stolen electronic notes that were made part of the 1st and 2nd mortgage loans and pledged to an undisclosed trust entity for which Defendant Fannie Mae served as the issuer, trustee, master servicer, and guarantor of timely payment of principal and interest payments to investors

No.: F-238-11) wherein MERS declared in relevant part that: "MERS is not a mortgage servicer, *nor does MERS own beneficial interests in promissory notes*." (Id. at ¶9).

[13] See the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005).

[14] As set forth on the "*Frequently Asked Questions*" section of the website owned and operated by MERSCORP, when asked: "*Does MERS have the documents for loans registered on the MERS® System?*", MERSCORP and MERS declare that "No. MERS, MERSCORP Holdings or the MERS® System are not document custodians and do not hold promissory notes or mortgage documents on behalf of lenders, servicers or investors. We are not responsible for keeping mortgage records—the servicer maintains the loan files." See https://mersinc.org/about/faq (last checked Dec. 19, 2018).

[15] See NY UCC § 3-604. Discharge by cancellation or renunciation.

Continued on following page

who purchased MBS without evidence of a true sale, transfers, and assignments beyond the MERS® eRegistry.

16.     Thus, for the foregoing reasons set forth above within ¶¶14-15, and re-stated herein as though fully incorporated by reference, the Plaintiff avers that the refinance "mortgage loan" in dispute is fraud *in factum*,[16] unconscionable, predatory (per se), and unenforceable under state, federal, and common law.

17.     Unaware of the aforementioned matters set forth above within ¶¶14-16, Mr. Campbell proudly fulfilled what the Plaintiff then believed to be a lawful obligation under the 1st and 2nd "mortgage loans" in dispute by forwarding the first timely installment of principal, interest, and escrow expenses for real property taxes and hazard insurance premiums declared due to and demanded by Defendants CHLS and or CHL as of January 1, 2007, followed by payments declared due and demanded by the same Defendants for the months of February through May of 2007.

18.     The Plaintiff avers that, at no time while Mr. Campbell was making the aforementioned payments to Defendants CHLS and or CHL towards the 1st and 2nd mortgage loans in dispute did either Defendant identify themselves as anything other than servicers as defined within 12 CFR § 226.39(a)(1) which states in relevant part that: "... a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is

---

[16] Fraud in the factum occurs when a deed is forged or obtained from an individual who was induced to sign something completely different than what he or she thought they were signing (false pretenses) (GMAC Mtge. v Chan, 56 AD3d 521 [2d Dept 2008]; Dalessio v Kressler, 6 AD3d 57, 61-61 [2d Dept 2004] citing First Nat. Bank of Odessa v Fazzari, 10 NY2d 394 [1961]). When fraud in the factum applies, a deed may be deemed void ab initio and any mortgage that was obtained based upon such a deed is invalid. (US Bank Natl. Assn. v Mizell 2013 NY Slip Op 51065(U)); see also NY UCC § 3-305. Defenses and claims in recoupment, that states in part, that: "(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following: (1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,...".; see also NYCL GBL § 349.

assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation.". See also 15 U.S.C. § 1641(f)(1) holding that: "A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.".

19.    According to Defendants BANA, BAC, CHL, and CHLS, Mr. Campbell failed to make the payment towards the 1st mortgage loan in dispute that was declared due as of June 1, 2007 and, therefore, "defaulted".

20.    On August 6, 2007, Mr. Campbell was not aware and recently discovered, that AHMC as the user of the non-existing entity ABC that is falsely designated as the lender for the 1st and 2nd mortgage loans in dispute, together with AHMC's affiliate companies, became Chapter 11 Bankruptcy Debtors by filing a petition in the United States Bankruptcy Court for the District of Delaware[17] while, at all relevant times, MERS as the purported nominee for the non-existing entity remained the alleged "mortgagee" of record with the Westchester County Clerk asserting ownership and possession of the 1st and 2nd mortgage loans.

21.    On December 11, 2007, Defendants CHL and RRA commenced a foreclosure debt collection action in the Supreme Court of New York – Westchester County by complaint and summons, wherein the Defendants declared CHL to be the owner in possession of the 1st mortgage loan in dispute while, at all relevant times, the 1st and 2nd mortgage instruments that were recorded by Westchester County Clerk on February 21, 2007 remained recorded in favor of MERS as the purported "mortgagee" acting as the alleged nominee for the non-existing entity ABC without any

---

[17] See In Re: American Home Mortgage Holdings, Inc., et al. (Case No.: 07-11047).

recorded instruments asserting a transfer and assignment of the 1st and 2nd "mortgage loans" in dispute to CHL or any other party.

22.    Hence, as of December 11, 2007 through the duration of years 2008, 2009, and 2010, Defendants CHL, CHLS, BAC, BANA, and RRA used both the mail and wire to prosecute its debt collection foreclosure action in the State Court of New York by:

> a.    commencing and maintaining an action in violation of GBL § 130(9) for the 1st mortgage loan in dispute misrepresented non-official entity ABC as the lender.;
>
> b.    misrepresenting ABC as the lender for the 1st mortgage loan in dispute, while concealing that ABC was, at all relevant times, a non-official entity that was never registered with the NYS Division of Corporations to do business in the State of New York.;
>
> c.    misrepresenting that Mr. Campbell gave a mortgage to MERS on November 17, 2006 as the purported "nominee" for the non-official entity ABC, while omitting and concealing that: (i) MERS could not be a nominee for a non-existing entity and there is no evidence of a power attorney validating the assertion that MERS was acting as an agent; (ii) MERS never extended credit or loaned its monies to the Plaintiff;[18] (iii) MERS never took an economical or beneficial interest in the 1st or 2nd "mortgage loans" in dispute;[19] (iv) MERS was contractually prohibited from taking any action on the 1ST or 2nd "mortgage

---

[18] See MERS' Appellant brief filed on October 15, 2004 in Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent (A-04-000786) (Id. at 22).

[19] See MERS' Appellant brief filed on October 15, 2004 in Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent (A-04-000786) (Id. at 11-13, 20, and 22).

Continued on following page

loans" including, but not limited to, the right to foreclosure and or assign;[20] and (v) MERS never acted as a document custodian with physical possession of the 1st or 2nd "mortgage loans" in dispute.[21]

d.  omitting and concealing that AHMC as the user of the unofficial entity ABC, became a bankruptcy debtor as of August 6, 2007 (In Re: American Home Mortgage Holdings, Inc., et al. (Case No.: 07-11047)).;

e.  misrepresenting that CHL and BANA were the owners in possession of the 1st mortgage loan in dispute while, at all relevant times, MERS remained the purported "mortgagee" of record with the Westchester County Clerk asserting ownership and possession of the 1st and 2nd mortgage loans.;

f.  concealing that Defendants CHLS, CHL, BAC, BANA, and Fannie Mae were, simultaneously, reporting on the MERS® Servicer ID[22] that CHL and or BANA were only servicers and Fannie Mae as the investor a/k/a owner for the 1st mortgage loan in dispute.;

---

[20] See the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005).

[21] As set forth on the *Frequently Asked Questions* section of the website owned and operated by MERSCORP, when asked: *"Does MERS have the documents for loans registered on the MERS® System?"*, MERSCORP and MERS declare that "No. MERS, MERSCORP Holdings or the MERS® System are not document custodians and do not hold promissory notes or mortgage documents on behalf of lenders, servicers or investors. We are not responsible for keeping mortgage records—the servicer maintains the loan files." See https://mersinc.org/about/faq (last checked Dec. 19, 2018).

[22] As declared on the website owned and operated by MERSCORP (See https://mersinc.org/homeowners/mers-servicerid), the "MERS® ServicerID is a free service that provides information on the current servicer and investor (owner of the note) for loans registered on the MERS® System.".

g. omitting and concealing the existence and location of the electronic note that: (i) is worth at least $512,000.00; (ii) was registered in the MERS® eRegistry with the 18-digit MIN of 100024200014910414, and; (iii) was made part of the 1st mortgage loan in dispute.; and

h. concealing that, at best, Defendants CHLS, CHL, BAC, BANA, and or Fannie Mae were only in possession of a scanned image (i.e. unoriginal) copy of the original 1st note for the original instrument was deliberately destroyed by AHMC as the user of the non-official entity ABC and or AHMC's successors and assigns upon the unlawful conversion – forgery – theft of the aforementioned electronic note that: (i) is worth at least $512,000.00; (ii) was registered in the MERS® eRegistry with the 18-digit MIN of 100024200014910414, and; (iii) was made part of the 1st mortgage loan in dispute.

Furthermore, for the duration of the years 2007, 2008, 2009, and 2010, Mr. Campbell never received a "Notice of Sale / Assignment of Loan" communication from Defendants CHLS, CHL, BAC, BANA, RRA, Fannie Mae, or any other party asserting to be the "new creditor" asserting ownership and or possession of the fraud in factum 1st and 2nd "mortgage loans" in dispute. See 15 U.S.C. § 1641(g).

23.    On April 13, 2011, while BANA continued prosecuting the aforementioned illegal debt collection foreclosure action initially commenced (unlawfully) in the State Court by CHL on December 11, 2007 and the Plaintiff remained unaware of the facts and issues set forth above within ¶¶14-22, Mr. Campbell was unaware and recently discovered that federal authorities issued a consent order in In the Matter of: MERSCORP, Inc. and the Mortgage Electronic Registration

Systems, Inc. (OCC No. AA-EC-11-20, Board of Governors, Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040, FHFA No. EAP-11-01) prohibiting MERSCORP, its subsidiary MERS, MERSCORP's members and non-members from further engagement in unfair, deceptive, and unlawful practices related to the foreclosure of residential "mortgage loans" including the creation of instruments asserting MERS through the latter's certifying officers transferred interest in "mortgage loans", and Article IX of the consent order required that, within ninety (90) days from the effective date of order, the MERSCORP Board to obtain an independent, external review of and recommendations regarding the eRegistry system of recording electronic notes.

24.   Also on April 13, 2011, the Plaintiff was not aware and recently discovered that the Comptroller of the Currency of the United States of America ("Comptroller") through his national bank examiners and other staff of the Office of the Comptroller of the Currency ("OCC") as part of an interagency horizontal review of major residential mortgage servicers and examination of the residential real estate mortgage foreclosure processes, entered a consent order against Defendant BANA in In the Matter of Bank of America, N.A. (Order No.: AA-EC-11-12) as servicer (not owner) for a portfolio of 13,500,000, upon identifying certain deficiencies and unsafe or unsound practices in residential mortgage servicing and in BANA's initiation and handling of foreclosure proceedings from 2008 through 2010, and prohibited the Defendant from further engagement in the following unfair, deceptive, and illegal practices including, but not limited to:

a.   filing or causing to be filed in state and federal courts affidavits executed by its employees or employees of third-party service providers making various assertions, such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the

17

borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records;

b.  filing or causing to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary;

c.  litigating foreclosure proceedings and initiating non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time;

d.  failing to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes;

e.  failing to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; and

f.  failing to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.

Hence, the Plaintiff avers that despite the prohibitions and requirements set forth within the consent aforementioned consent orders entered on April 13, 2011 against Defendant BANA in In the Matter of Bank of America, N.A. (Order No.: AA-EC-11-12) and non-parties to this action MERSCORP, the latter's members (including CHLS, CHL, BAC, BANA, and Fannie Mae), and

MERS in <u>In the Matter of: MERSCORP, Inc. and the Mortgage Electronic Registration Systems,</u> <u>Inc.</u> (OCC No.AA-EC-11-20, Board of Governors, Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040, FHFA No. EAP-11-01), Defendants BAC and BANA as members of MERSCORP and non-MERSCORP member RRA, willfully continued to engage in unsound and unsafe practices related to the servicing and attempted foreclosure of the  fraud in factum 1st mortgage loan in dispute for the duration of the year 2011, and no effort was made by the Defendants to remediate and correct the harms caused to Mr. Campbell.

25.     On June 7, 2011, while Defendants BANA and RRA continued prosecuting the aforementioned illegal debt collection foreclosure action initially commenced (unlawfully) in the State Court by CHL on December 11, 2007 and the Plaintiff remained unaware of the facts and issues set forth above within ¶¶14-24, Mr. Campbell was unaware and recently discovered that the falsehoods about MERS that served as the basis for the foreclosure debt collection action initiated and prosecuted against the Plaintiff by MERSCORP members CHL, CHLS, BAC, and BANA and non-MERSCORP member RRA, were unraveled and thereafter barred by the doctrine of collateral estoppel[23] with the opinion and order entered by the Appellate Division, Second Department in <u>Bank of N.Y. v Silverberg</u> 2011 NY Slip Op 05002 [86 AD3d 274] by reversing the Supreme Court, Suffolk County and granting the defendant's motion to dismiss pursuant to CPLR 3211 (a)(3) by declaring in relevant part that:

---

[23] The doctrine of collateral estoppel, a narrower species of res judicata, precludes a party from relitigating in a later action "an issue which has previously been decided against him [or her] in a proceeding in which he [or she] had a fair opportunity to fully litigate the point" (<u>Kaufman v Eli Lilly & Co.</u>, 65 NY2d 449, 455 [1985] [internal quotations and citation omitted]; see also <u>Ryan v New York Tel. Co.</u>, 62 NY2d 494, 500-501 [1984]). The two requirements which must be satisfied before the doctrine of collateral estoppel can be invoked are that "the identical issue necessarily must have been [*12]decided in the prior action and be decisive of the present action," and that "the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination" (<u>Kaufman</u>, 65 NY2d at 455). "[T]he fair application of collateral estoppel requires a practical inquiry into the realities' of the prior litigation" (<u>Lewis</u>, 99 AD2d at 659, citing <u>Gilberg v Barbieri</u>, 53 NY2d 285, 292 [1981]).

"In sum, because MERS was never the lawful holder or assignee of the notes described and identified in the consolidation agreement, the corrected assignment of mortgage is a nullity, and MERS was without authority to assign the power to foreclose to the plaintiff. Consequently, the plaintiff failed to show that it had standing to foreclose... This Court is mindful of the impact that this decision may have on the mortgage industry in New York, and perhaps the nation. Nonetheless, the law must not yield to expediency and the convenience of lending institutions. Proper procedures must be followed to ensure the reliability of the chain of ownership, to secure the dependable transfer of property, and to assure the enforcement of the rules that govern real property. Accordingly, the Supreme Court should have granted the defendants' motion pursuant to CPLR 3211 (a) (3) to dismiss the complaint insofar as asserted against them for lack of standing...".

Furthermore, for the duration of the year 2011 while BANA continued prosecuting the aforementioned illegal debt collection foreclosure action initially commenced (unlawfully) in the State Court by CHL on December 11, 2007, Mr. Campbell never received a "Notice of Sale / Assignment of Loan" communication from Defendants CHLS, CHL, BAC, BANA, RRA, Fannie Mae, or any other party asserting to be the "new creditor" asserting ownership and or possession of the fraud in factum 1st and 2nd "mortgage loans" in dispute as required by 15 U.S.C. § 1641(g).

26.     On February 3, 2012, while Defendants BANA and RRA continued prosecuting the aforementioned illegal debt collection foreclosure action initially commenced (unlawfully) in the State Court by CHL on December 11, 2007 and the Plaintiff remained unaware of the facts and issues set forth above within ¶¶14-25, Mr. Campbell was unaware and recently discovered that the New York Attorney General as the top law enforcement official for the State of New York recognized the harm being caused to consumers arising from foreclosure debt collection actions initiated and prosecuted by MERSCORP members asserting false claims regarding MERS and commenced a civil action against MERSCORP, the latter's members including the Defendant named herein BANA, and MERSCORP's subsidiary MERS by asserting in relevant part that:

"In addition, since MERS Inc. has few or no employees (again to reduce costs) but serves as the mortgagee for tens of millions of mortgages throughout the county, it has indiscriminately designated over 20,000 MERS member employees as MERS

"certifying officers" to act on the company's behalf, expressly authorizing these individuals to assign MERS mortgages, to execute paperwork necessary to foreclose on properties secured by MERS mortgages, and to submit proofs of claims and affidavits on behalf of MERS in bankruptcy proceedings. MERS has failed to adequately screen, train, or monitor the activities of these certifying officers, who have executed millions of important legal documents on MERS' behalf." (Id. at paragraph 17).

"The MERS System effectively eliminated homeowners' and the public's ability to track the purchase and sale of properties through the traditional public records system. Instead, this information is now stored in a private database maintained by MERS. However, the MERS database is unreliable and inaccurate. Defendant Servicers, along with other MERS members, have failed to consistently register loan transactions in the MERS System, including transfers of ownership interests and servicing rights. Moreover, MERS did not take basic steps to ensure the data's accuracy and integrity." (Id at paragraph 18).

"By creating this bizarre and complex end-around of the traditional public recording system, banks achieved their primary goal - over 70 million mortgage loans, including millions of subprime loans, have been registered in the MERS System and the industry has saved more than $2 billion in recording fees. In addition, over the last several years, banks rapidly securitized and sold off millions of loans, often misrepresenting the quality and nature of the mortgages being transferred." (Id at paragraph 19).

"However, when the subprime mortgage crisis hit and the number of defaults and foreclosures skyrocketed around the country, the shortcomings of the MERS System and its impact on tracking a property's chain of title became readily apparent, sparking widespread litigation. The creation and use of the MERS System by Defendant Servicers and other financial institutions have resulted in a wide range of deceptive and illegal practices, particularly with respect to the filing of New York Foreclosure Proceedings in state courts and federal bankruptcy courts." (Id at paragraph 20).

"The use of the MERS System, coupled with faulty and sloppy document preparation and execution practices, have resulted in foreclosures being filed against New York homeowners where the foreclosing party lacked the authority or standing to sue. MERS members, including Defendant Servicers, have brought over 13,000 foreclosures against New York homeowners naming MERS as the plaintiff/foreclosing party. Indeed, for years MERS affirmatively encouraged its members to file foreclosures in MERS' name, again based on the rationale that doing so would save banks time and money. However, MERS often lacked standing to foreclose, and representations in court submissions that MERS owned and/or held the promissory note in such proceedings were often false and deceptive." (Id. at paragraph 21)

"To the extent that foreclosure proceedings were filed in MERS' name and MERS lacked standing, the foreclosures and any resulting foreclosure judgment and sale may be invalid, creating a cloud on title for properties throughout the State of New York." (Id. at paragraph 72)

"The most egregious abuses have occurred in assignment documents prepared and signed by certifying officers, including Defendant Servicers' employees and agents, on behalf of MERS. Through these documents, MERS claims to assign the mortgage (and in some instances the note as well) from itself to the third party who is bringing the New York Foreclosure Proceeding. New York courts have consistently recognized that financial industry plaintiffs lack standing to foreclose, or to file a proof of claim or motion to lift a stay in bankruptcy proceedings, when they rely on faulty transfers or assignments of notes or mortgages by MERS through its certifying officers. *See, e.g., Bank of New York v. Silverberg*, 86 A.D.3d 274, 281-82, 926 N.Y.S.2d 532, 538 (2d Dep't 2011); *Aurora Loan Services, LLC v. Weisblum,* 85 A.D.3d 95, 109 (2d Dep't 2011); *LaSalle Bank Nat'l Ass 'n v. Lamy,* 12 Misc.3d 1191(A), 824 N.Y.S.2d 769, 2006 WL 2251721, at \*\*2-3 (N.Y. Sup. Ct. 2006); *In re Agard,* 444 B.R. 231, 246 (Bkrtcy. E.D.N.Y. 2011); *Bank of New York v. Mulligan,* No. 29399/07, 2010 WL 3339452, at \*7 (N.Y. Sup. Ct. Aug. 25, 2010); *Onewest Bank, F.S.B. v. Drayton,* 29 Misc. 3d 1021, 1038-40, 910 N.Y.S.2d 857, 870-71 (N.Y. Sup. Ct. 2010); *Bank of New York v. Alderazi,* 28 Misc. 3d 376, 379, 900 N.Y.S.2d 821, 823-24 (N.Y. Sup. Ct. 2010)." (Id. at paragraph 75)

"MERS assignments have numerous defects, including affirmative misrepresentations of fact, which render them false, deceptive, and/or invalid. This false and defective paperwork has often masked the foreclosing party's inability to establish its authority to foreclose, and as a result has misled homeowners and the court. Defendant Servicers and other MERS members often proffered to the court and relied on these faulty assignments as evidence of standing, and thereby created an illusion that standing existed when it in fact did not. In addition, Defendant Servicers made false and deceptive statements in pleadings and other court submissions each time they asserted that the foreclosing party held and/or owned the note and mortgage when, in fact, it did not." (Id. at paragraph 76)

See the summons and complaint for <u>The People of the State of New York, et al. v. MERSCORP Inc., Mortgage Electronic Registration Systems, Inc., et al.</u> filed in the Supreme Court of New York – Kings County).[24]

---

[24] See also Stipulation and Order of Discontinuance entered on September 11, 2013 in <u>The People of the State of New York, et al. v. MERSCORP Inc., Mortgage Electronic Registration Systems, Inc., et al.</u> (Index No. 2768/12).

27.     On March 12, 2012, while Defendants BANA and RRA continued prosecuting the aforementioned illegal debt collection foreclosure action initially commenced (unlawfully) in the State Court by CHL on December 11, 2007 and the Plaintiff remained unaware of the facts and issues set forth above within ¶¶14-26, Mr. Campbell was unaware and recently discovered that the Department of Justice ("DOJ"), the Department of Housing and Urban Development ("HUD") and 49 State Attorney Generals, including the New York State Attorney General ("NY AG"), announced a $25 billion agreement with the nation's five largest mortgage servicers (not owners of mortgage loans) of which included Defendants CHLS, CHL, BAC, and BANA, in order to:

    a.   address mortgage loan servicing and foreclosure abuses.;

    b.   prevent foreclosure abuses such as forgery, false notarizations, and other improper documentation practices, and lost paperwork.;

    c.   require stricter oversight of foreclosure processing, including third-party vendors of which includes foreclosure attorneys.;

    d.   new requirements to undertake pre-filing reviews of certain documents filed in bankruptcy court.;

    e.   create new servicing standards in order to make foreclosure a last resort by requiring servicers to evaluate homeowners for other loss mitigation options first.;

    f.   restrict servicers from foreclosing while the homeowner is being considered for a loan modification.;

    g.   require servicers to remediate any harm to borrowers that are identified in quarterly reviews overseen by the monitor and, in some instances, conduct full

23

> look-backs to identify any additional borrowers who may have been harmed.; and
>
> h. require any servicer who violates the requirements of the consent judgment to pay penalties of up to $1 million per violation or up to $5 million for certain repeat violations.

28.     On March 14, 2012, while Defendants BANA and RRA continued prosecuting the aforementioned illegal debt collection foreclosure action initially commenced (unlawfully) in the State Court by CHL on December 11, 2007 and the Plaintiff remained unaware of the facts and issues set forth above within ¶¶14-27, Mr. Campbell was unaware and recently discovered that the United States of America and 49 State Attorney Generals (including the NY AG) filed a civil complaint in the United States District Court for the District of Columbia (See United States of America, et.al. v. Bank of America N.A., et al., (Docket No. 1:12-cv-00361 RMC)), with the NY AG appearing on behalf of the Plaintiff and similarly situated victims pursuant to protection enforcement authority conferred on the NY AG by state law and pursuant to *parens patriae* and common law authority, seeking injunctive relief, restitution for consumer, and civil penalties against CHLS, BAC, and BANA as servicers (not owners) for a portfolio of residential mortgage loans for engaging in unfair, deceptive, and illegal practices including, but not limited, ***"Wrongful Conduct Related to Foreclosures"*** such as:

> a. failing to properly identify the foreclosing party.;
>
> b. charging improper fees related to foreclosures.;
>
> c. preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process

(including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments).;

d.  preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning." Where third parties engaged in robosigning on behalf of the Banks, they did so with the knowledge and approval of the Banks.;

e.  executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law.; and

f.  misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents.

29.  On April 4, 2012, while Defendants BANA and RRA continued prosecuting the aforementioned illegal debt collection foreclosure action initially commenced (unlawfully) in the State Court by CHL on December 11, 2007 and the Plaintiff remained unaware of the facts and issues set forth above within ¶¶14-28, Mr. Campbell was unaware and recently discovered that Defendants CHLS, CHL, BAC, and BANA entered into a settlement agreement with the United States of America and 49 State Attorney Generals (including the NY AG) that was coined the "*National Mortgage Settlement*" that prohibited the Defendants herein as servicers (not the owners) of a portfolio of residential mortgage loans from further engagement in the aforementioned unfair, deceptive, and illegal practices cited in the March 14, 2012 civil complaint in United States of America, et.al. v. Bank of America N.A., et.al, (Docket No. 1:12-cv-00361 RMC) that took place as of 11:59 p.m., Eastern Standard Time, on February 8, 2012, to avoid

25

penalties of up to $1 million per violation or up to $5 million for certain repeat violations under the following laws set forth within the "Terms and Conditions" (<u>Id.</u> at Page 233):

a. the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA").;

b. the False Claims Act.;

c. the Racketeer Influenced and Corrupt Organizations Act.;

d. the Real Estate Settlement Procedures Act.;

e. the Fair Credit Reporting Act.;

f. the Fair Debt Collection Practices Act.;

g. the Truth in Lending Act.;

h. the Interstate Land Sales Full Disclosure Act.;

i. 15 U.S.C. § 1691(d) ("Reason for Adverse Action") or § 1691(e) ("Appraisals").; and

j. sections 502 through 509 (15 U.S.C. § 6802-6809) of the Gramm-Leach Bliley Act except for section 505 (15 U.S.C. § 6805) as it applies to section 501(b) (15 U.S.C. § 6801(b)).

30. On July 24, 2012, nearly five years from the date when AHMC, as the user of the non-existing entity ABC, entered bankruptcy on August 6, 2007 (<u>In Re: American Home Mortgage Holdings, Inc., et al.</u> (Case No.: 07-11047)), nearly five years from the December 11, 2007 date when Defendants CHL and RRA commenced (unlawfully) a debt collection foreclosure action in the State Court by misrepresenting CHL as the owner in possession of the 1st mortgage loan in dispute while MERS as the purported "nominee" for the non-official entity ABC remained the "mortgagee" of record with the Westchester County Clerk, and nearly three months from the April

4, 2012 date when BANA entered into the NMS prohibiting further engagement in unfair, deceptive, and illegal practices cited in the March 14, 2012 civil complaint in <u>United States of America, et.al. v. Bank of America N.A., et.al</u>, (Docket No. 1:12-cv-00361 RMC), Defendant BANA used the mail and or wire to create and/or cause the Westchester County Clerk to record a void ab initio - forged – falsely acknowledged instrument titled "ASSIGNMENT OF MORTGAGE" wherein:

      a. MERS as the purported "nominee" for the non-existing entity ABC is misrepresented to be the assignor of the 1st mortgage loan on July 9, 2012, and BANA is declared to be the assignee of the same when, at all relevant times, BANA knew or should have known that: (i) MERS could not be a nominee for the non-existing entity ABC and there is no evidence of a power attorney validating the assertion that MERS was acting as ABC's agent; (ii) MERS never extended credit or loaned its monies to the Plaintiff;[25] (iii) MERS never took an economical or beneficial interest in the 1st or 2nd "mortgage loans" in dispute;[26] (iv) MERS was contractually prohibited from taking any action on the 1ST or 2nd "mortgage loans" including, but not limited to, the right to

---

[25] See MERS' Appellant brief filed on October 15, 2004 in <u>Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent</u> (A-04-000786) (Id. at 22).; see also the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in <u>Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance</u>, 704 N.W.2d 784, 788 (Neb. 2005); see also the February 11, 2011 *Certification of Mortgage Electronic Registration Systems, Inc. In Response to Administrative Order 01-2010* filed with the N.J. Sup. Ct. (Docket No.: F-238-11) wherein MERS declared in relevant part that: "MERS is not a mortgage servicer, ***nor does MERS own beneficial interests in promissory notes*.**" (Id. at ¶9).

[26] See MERS' Appellant brief filed on October 15, 2004 in <u>Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent</u> (A-04-000786) (Id. at 11-13, 20, and 22).

Continued on following page

foreclosure and or assign;[27] and (v) MERS never acted as a document custodian with physical possession of the 1st or 2nd "mortgage loans" in dispute.[28]

b.  the name and alleged signature of Trisha Jackson appears as a purported "Assistant Secretary" for MERS as an alleged "nominee" for the non-existing entity ABC which constitutes a violation of 18 U.S.C. § 1342 because, at all relevant times, Trisha Jackson was not and could not be an employee of MERS for the latter did not (and still does not to present date) have any such employees.;[29] and

c.  the name and alleged acknowledgment of California notary public Takayuki E. Uto appears declaring that Trisha Jackson appeared before the notary and presented sufficient identification as an "Assistant Secretary" for MERS as an alleged "nominee" for the non-existing entity ABC, which is false because Trish Jackson could not be and was never an "Assistant Secretary" for MERS who has no such employees and therefore did not appear before the notary public to present sufficient identification.

---

[27] See the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005).

[28] As set forth on the *Frequently Asked Questions*" section of the website owned and operated by MERSCORP, when asked: "*Does MERS have the documents for loans registered on the MERS® System?*", MERSCORP and MERS declare that "No. MERS, MERSCORP Holdings or the MERS® System are not document custodians and do not hold promissory notes or mortgage documents on behalf of lenders, servicers or investors. We are not responsible for keeping mortgage records—the servicer maintains the loan files." See https://mersinc.org/about/faq (last checked Dec. 19, 2018).

[29] On April 7, 2010, MERSCORP executive William Hultman admitted during depositions given while under oath in Bank of New York as trustee vs. Victor Ukpe, et al. (Docket No. F-10209-08), NJ Sup. Ct. that MERS has never had any employees (Id. at Page 69, Lines 13 - 18, 25, and Page 70, Lines 1-9).

Hence, for the duration of the year 2012, and throughout years 2013 and 2014, Mr. Campbell never received a "Notice of Sale / Assignment of Loan" communication from Defendants CHLS, CHL, BAC, BANA, RRA, Fannie Mae, or any other party asserting to be the "new creditor" asserting ownership and or possession of the fraud in factum 1st and 2nd "mortgage loans" in dispute. See 15 U.S.C. § 1641(g). Furthermore, on June 30, 2014 Defendants RRA and BANA caused a consent to change SDB as attorneys in the aforementioned illegally commenced State Court foreclosure debt collection action.

31.     On March 24, 2015, nearly eight years from the date when AHMC, as the user of the non-existing entity ABC, entered bankruptcy on August 6, 2007 (In Re: American Home Mortgage Holdings, Inc., et al. (Case No.: 07-11047)), nearly eight years from the December 11, 2007 date when Defendants CHL and RRA commenced (unlawfully) a debt collection foreclosure action in the State Court by misrepresenting CHL as the owner in possession of the 1st mortgage loan in dispute while MERS as the purported "nominee" for the non-official entity ABC remained the "mortgagee" of record with the Westchester County Clerk, and nearly three years from the April 4, 2012 date when BANA entered into the NMS prohibiting further engagement in unfair, deceptive, and illegal practices cited in the March 14, 2012 civil complaint in United States of America, et.al. v. Bank of America N.A., et.al, (Docket No. 1:12-cv-00361 RMC), Defendant BANA used the mail and or wire to create and cause the Westchester County Clerk to record two void *ab initio* - forged – falsely acknowledged instruments, wherein:

> a. within the first instrument titled "CORRECTION ASSIGNMENT OF MORTGAGE", MERS as the purported "nominee" for the non-existing entity ABC is misrepresented to be the assignor of the 1st mortgage and CHL is declared to be the assignee of the same on January 14, 2015 (more than seven

29

years from the Dec. 11, 2007 date when CHL commenced (unlawfully) its debt collection foreclosure action in the State Court), without any mention as to when and how the 1st note was transferred and when, at all relevant times, BANA knew or should have known that: (i) MERS could not be a nominee for the non-existing entity ABC and there is no evidence of a power attorney validating the assertion that MERS was acting as ABC's agent; (ii) MERS never extended credit or loaned its monies to the Plaintiff;[30] (iii) MERS never took an economical or beneficial interest in the 1st or 2nd "mortgage loans" in dispute;[31] (iv) MERS was contractually prohibited from taking any action on the 1ST or 2nd "mortgage loans" including, but not limited to, the right to

---

[30] See MERS' Appellant brief filed on October 15, 2004 in Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent (A-04-000786) (Id. at 22).; see also the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005); see also the February 11, 2011 *Certification of Mortgage Electronic Registration Systems, Inc. In Response to Administrative Order 01-2010* filed with the N.J. Sup. Ct. (Docket No.: F-238-11) wherein MERS declared in relevant part that: "MERS is not a mortgage servicer, *nor does MERS own beneficial interests in promissory notes.*" (Id. at ¶9).

[31] See MERS' Appellant brief filed on October 15, 2004 in Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent (A-04-000786) (Id. at 11-13, 20, and 22).; see also the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005); see also the February 11, 2011 *Certification of Mortgage Electronic Registration Systems, Inc. In Response to Administrative Order 01-2010* filed with the N.J. Sup. Ct. (Docket No.: F-238-11) wherein MERS declared in relevant part that: "MERS is not a mortgage servicer, *nor does MERS own beneficial interests in promissory notes.*" (Id. at ¶9).

Continued on following page

foreclosure and or assign;[32] and (v) MERS never acted as a document custodian with physical possession of the 1st or 2nd "mortgage loans" in dispute.[33]

b. within the first instrument titled "CORRECTION ASSIGNMENT OF MORTGAGE", the name and alleged signature of Aida Duenas appears as a purported "Assistant Secretary" for MERS as an alleged "nominee" for the non-existing entity ABC which constitutes a violation of 18 U.S.C. § 1342 because, at all relevant times, Aida Duenas was not and could not be an employee of MERS for the latter did not (and still does not to present date) have any such employees.;[34]

c. within the first instrument titled "CORRECTION ASSIGNMENT OF MORTGAGE", the name and alleged acknowledgment of California notary public Violet Thomas-Hicks appears declaring that Aida Duenas appeared before the notary and presented sufficient identification as an "Assistant Secretary" for MERS as an alleged "nominee" for the non-existing entity ABC, which is false because Aida Duenas could not be and was never an "Assistant

---

[32] See the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005).

[33] As set forth on the *"Frequently Asked Questions"* section of the website owned and operated by MERSCORP, when asked: *"Does MERS have the documents for loans registered on the MERS® System?"*, MERSCORP and MERS declare that "No. MERS, MERSCORP Holdings or the MERS® System are not document custodians and do not hold promissory notes or mortgage documents on behalf of lenders, servicers or investors. We are not responsible for keeping mortgage records—the servicer maintains the loan files." See https://mersinc.org/about/faq (last checked Dec. 19, 2018).

[34] See the April 7, 2010 deposition of MERSCORP executive William Hultman in Bank of New York as trustee vs. Victor Ukpe, et al. (Docket No. F-10209-08) NJ Sup. Ct., admitting while under oath that MERS has never had any employees (Id. at Page 69, Lines 13 - 18, 25, and Page 70, Lines 1-9).

Secretary" for MERS who has no such employees and therefore did not appear

before the notary public to present sufficient identification.; and

d.  within the second instrument titled "ASSIGNMENT OF MORTGAGE", CHL

is misrepresented to be the "assignor" of the assignor of the 1st mortgage and

BANA is declared to be the assignee of the same on March 13, 2015 without

any mention as to when and how the 1st note was transferred and when, at all

relevant times, BANA knew or should have known that CHL never received

ownership and or possession of the 1st note and mortgage from MERS because

the latter: (i) could not be a nominee for the non-existing entity ABC and there

is no evidence of a power attorney validating the assertion that MERS was

acting as ABC's agent; (ii) never extended credit or loaned its monies to the

Plaintiff;[35] (iii) never took an economical or beneficial interest in the 1st or 2nd

"mortgage loans" in dispute;[36] (iv) was contractually prohibited from taking

any action on the 1ST or 2nd "mortgage loans" including, but not limited to, the

---

[35] See MERS' Appellant brief filed on October 15, 2004 in Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent (A-04-000786) (Id. at 22).; see also the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005); see also the February 11, 2011 Certification of Mortgage Electronic Registration Systems, Inc. In Response to Administrative Order 01-2010 filed with the N.J. Sup. Ct. (Docket No.: F-238-11) wherein MERS declared in relevant part that: "MERS is not a mortgage servicer, nor does MERS own beneficial interests in promissory notes." (Id. at ¶9).

[36] See MERS' Appellant brief filed on October 15, 2004 in Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent (A-04-000786) (Id. at 11-13, 20, and 22).; see also the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005); see also the February 11, 2011 Certification of Mortgage Electronic Registration Systems, Inc. In Response to Administrative Order 01-2010 filed with the N.J. Sup. Ct. (Docket No.: F-238-11) wherein MERS declared in relevant part that: "MERS is not a mortgage servicer, nor does MERS own beneficial interests in promissory notes." (Id. at ¶9).

Continued on following page

right to foreclosure and or assign;[37] and (v) never acted as a document custodian

with physical possession of the 1st or 2nd "mortgage loans" in dispute.[38]

Furthermore, upon knowledge and belief, the Plaintiff avers that the name and alleged signature

of Danielle L. Arrington as a purported "Assistant Vice President" for CHL, and the alleged

notarization by Pennsylvania Notary Public Susan E. Laurito displayed within the aforementioned

instrument titled "ASSIGNMENT OF MORTGAGE" that is dated March 13, 2015 and recorded

on March 24, 2015, were falsely made and or forged because: (1) Danielle L. Arrington lacked the

capacity claimed, along with knowledge about the character, legality, ownership, and possession

of the original 1st mortgage loan in dispute; (2) Danielle L. Arrington never held or physically laid

eyes on the original 1st mortgage loan in dispute; and (3) Pennsylvania Notary Public Susan E.

Laurito never witnessed the signature of Danielle L. Arrington or sufficient identification from the

latter proving the capacity claimed within the instrument.

32.    By letter dated July 7, 2015 sent from BANA using the mail, the Defendant

informed Mr. Campbell that BANA transferred servicing (not ownership) for the 1st mortgage loan

in dispute to non-party to this complaint Seneca Mortgage Servicing, LLC ("Seneca") effective

July 26, 2015 and that, effective August 1, 2015, BANA declared in relevant part that: "the right

to collect payments... will be assigned, sold or transferred from Bank of America, N.A. to Seneca

Mortgage Servicing LLC...".   Further, by communication dated July 25, 2018 sent by mail from

---

[37] See the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005).

[38] As set forth on the *"Frequently Asked Questions"* section of the website owned and operated by MERSCORP, when asked: *"Does MERS have the documents for loans registered on the MERS® System?"*, MERSCORP and MERS declare that "No. MERS, MERSCORP Holdings or the MERS® System are not document custodians and do not hold promissory notes or mortgage documents on behalf of lenders, servicers or investors. We are not responsible for keeping mortgage records—the servicer maintains the loan files." See https://mersinc.org/about/faq (last checked Dec. 19, 2018).

non-party to this action Winston & Strawn, LLP ("Winston & Strawn") on behalf of BANA in response to Mr. Campbell's complaint filed against BANA with the Consumer Financial Protection Bureau ("CFPB"), Winston & Strawn reiterated that, effective July 26, 2015, BANA was no longer the servicer for the 1st mortgage loan in dispute by declaring in relevant part that: "…Please note that servicing of the Loan was transferred to Seneca Mortgage Servicing, LLC ("Seneca") effective July 26, 2015. Enclosed is a copy of the service transfer letter which contains contact information for Seneca among other information. Please contact Seneca to obtain information regarding the current status of the Loan.".

33.     Hence, despite knowing of the aforementioned facts and issues set forth above throughout ¶¶14-32 including, but not limited to, BANA's responsibilities pursuant to the consent order entered on April 4, 2012 in <u>United States of America, et.al. v. Bank of America N.A., et al.</u>, (Docket No. 1:12-cv-00361 RMC) and BANA's self-declared transfer of servicing for the 1st mortgage loan in dispute to Seneca effective July 26, 2015, throughout the remainder of year 2015 and throughout the years 2016 and 2017, Defendant BANA willfully allowed SDB to continue prosecuting the (unlawful) debt collection action in the State Court in the name of BANA as the Plaintiff claiming to be the owner in possession of the 1st mortgage loan, while omitting and concealing from the Plaintiff and State Court:

> a.   on March 22, 2016, Defendants BANA, Selene, and or US Bank through their non-party affiliate Orion Financial Group n/k/a MetaSource ("OFG") of Southlake, TX, used the mail and or wire to create and cause the Westchester County Clerk to record the first of two void *ab initio* – forged -- falsely acknowledged instruments titled "ASSIGNMENT OF MORTGAGE" recorded that day wherein: (i) BANA through its purported attorney in fact OFG (without

evidence of a power of attorney) is misrepresented to be the assignor of the 1st

mortgage and SW Sponsor, LLC ("SW Sponsor") located at 1290 Avenue of

the Americas, 34th Floor, NY, NY 10104 is misrepresented to be the "assignee"

of the same on August 6, 2015 when, at all relevant times, BANA never owned,

possessed, or had a legal right to enforce the fraud *in factum* 1st mortgage loan;

(ii) there is no mention of when and how the 1st note was transferred, and; (iii)

the instrument displays imposters, forgeries, and false notarizations[39]; and

b.   on March 22, 2016, Defendants BANA, Selene, and or US Bank through their

non-party affiliate OFG of Southlake, TX, used the mail and or wire to create

and cause the  Westchester County Clerk to record the last of two void *ab initio*

– forged – falsely acknowledged instruments titled "ASSIGNMENT OF

MORTGAGE" recorded that day wherein: (i) SW Sponsor is misrepresented to

be the assignor of the 1st mortgage and US Bank as Trustee for SW REMIC

Trust 2015 c/o Seneca is misrepresented to be the assignee of the same on

August 6, 2015 when, at all relevant times, SW Sponsor never owned,

possessed, or had a legal right to enforce the fraud *in factum* 1st mortgage loan;

(ii) there is no mention if when and how the 1st note was transferred; and (iii)

the instrument displays imposters, forgeries, and false notarizations.[40]

---

[39] The Plaintiff avers that the alleged signature of Charles R. Hall as an alleged "Vice President" for BANA that is displayed within the first of two instruments titled "ASSIGNMENT OF MORTGAGE" that Defendants BANA, Selene, and or US Bank as Trustee of SW REMIC Trust 2015 through OFG of Southlake, TX used the mail and or wire to create and record with the Westchester County Clerk on March 22, 2016, is a forgery and or falsely made along with the purported notarization of Texas notary public C. Lafferty because, at all relevant times, Charles "Chuck" Hall (and C. Lafferty) was employed by OFG, not BANA.

[40] The Plaintiff avers that the alleged signature of Charles R. Hall as an alleged "Vice President" for SW Sponsor with a New York, NY address that is displayed within the last of two instruments titled

Continued on following page

34.     On September 14, 2016, the Plaintiff was unaware and recently discovered, that

Defendant BANA through the latter's affiliate and non-party to this complaint ReconTrust

Company, N.A., used the mail and or wire to create and cause the Westchester County Clerk to

record a void ab initio – forged – falsely acknowledged instrument titled "SATISFACTION OF

MORTGAGE" wherein MERS as the purported "nominee" for the non-existing entity ABC, with

a fictitious address at PO Box 2026, Flint, MI is misrepresented to be discharger of the 2nd

mortgage loan in dispute on September 9, 2016 when, at all relevant times: (1) MERS could not

be and was not the nominee for the non-existing entity ABC and there is no evidence of a power

attorney validating the assertion that MERS was acting as ABC's agent; (2) MERS never extended

credit or loaned its monies to the Plaintiff towards the 2nd mortgage loan;[41] (3) MERS never took

an economical or beneficial interest in the 2nd "mortgage loans" in dispute;[42] (4) MERS was

---

"ASSIGNMENT OF MORTGAGE" that Defendants BANA, Selene, and or US Bank as Trustee of SW
REMIC Trust 2015 through OFG of Southlake, TX used the mail and or wire to create and record with the
Westchester County Clerk on March 22, 2016, is a forgery or falsely made along with the purported
notarization of Texas notary public C. Lafferty because, at all relevant times, Charles "Chuck" Hall (and
C. Lafferty) was employed by OFG, not SW Sponsor of New York.

[41] See MERS' Appellant brief filed on October 15, 2004 in <u>Mortgage Electronic Registration Systems,
Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent</u> (A-04-000786) (Id. at 22).; see
also the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in <u>Mortgage Electronic
Registration Systems, Inc. v. Nebraska Department of Banking & Finance</u>, 704 N.W.2d 784, 788 (Neb.
2005); see also the February 11, 2011 *Certification of Mortgage Electronic Registration Systems, Inc. In
Response to Administrative Order 01-2010* filed with the N.J. Sup. Ct. (Docket No.: F-238-11) wherein
MERS declared in relevant part that: "MERS is not a mortgage servicer, ***nor does MERS own beneficial
interests in promissory notes***." (Id. at ¶9).

[42] See MERS' Appellant brief filed on October 15, 2004 in <u>Mortgage Electronic Registration Systems,
Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent</u> (A-04-000786) (Id. at 11-13,
20, and 22).; see also the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in
<u>Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance</u>, 704
N.W.2d 784, 788 (Neb. 2005); see also the February 11, 2011 *Certification of Mortgage Electronic
Registration Systems, Inc. In Response to Administrative Order 01-2010* filed with the N.J. Sup. Ct. (Docket
No.: F-238-11) wherein MERS declared in relevant part that: "MERS is not a mortgage servicer, ***nor does
MERS own beneficial interests in promissory notes***." (Id. at ¶9).

Continued on following page

contractually prohibited from taking any action on the 2nd mortgage loan including, but not limited to, the right to foreclosure, assign, and or discharge;[43] and (5) MERS never acted as a document custodian with physical possession of the 2nd "mortgage loans" in dispute.[44]  Furthermore, upon knowledge and belief, the Plaintiff avers that the name and alleged signature of Shenita Moore as the alleged "Assistant Vice President" for MERS as the purported "nominee" for the non-existing entity ABC, its successors and assigns, and the alleged notarization by Arizona Notary Public Tara Smercak displayed within the aforementioned instrument titled "SATISFACTION OF MORTGAGE" that is dated September 9, 2016 and recorded on September 14, 2016, were falsely made and or forged under the direction by BANA and or the latter's affiliate companies because: (1) Shenita Moore lacked the capacity claimed, along with knowledge about the character, legality, ownership, and possession of the original 2nd mortgage loan in dispute the latter did not (and still does not to present date) have any such employees.;[45] (2) Shenita Moore never held or physically laid eyes on the original 2nd mortgage loan in dispute; and (3) Arizona Notary Public Tara Smercak did not and could not have witnessed the signature of Shenita Moore and or sufficient identification from the latter to prove the capacity claimed within the instrument.

---

[43] See the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in <u>Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance</u>, 704 N.W.2d 784, 788 (Neb. 2005).

[44] As set forth on the *"Frequently Asked Questions"* section of the website owned and operated by MERSCORP, when asked: *"Does MERS have the documents for loans registered on the MERS® System?"*, MERSCORP and MERS declare that "No. MERS, MERSCORP Holdings or the MERS® System are not document custodians and do not hold promissory notes or mortgage documents on behalf of lenders, servicers or investors. We are not responsible for keeping mortgage records—the servicer maintains the loan files." See https://mersinc.org/about/faq (last checked Dec. 19, 2018).

[45] On April 7, 2010, MERSCORP executive William Hultman admitted during depositions given while under oath in <u>Bank of New York as trustee vs. Victor Ukpe, et al</u>. (Docket No. F-10209-08), NJ Sup. Ct. that MERS has never had any employees (<u>Id</u>. at Page 69, Lines 13 - 18, 25, and Page 70, Lines 1-9).

35.     On September 15, 2017, the State Court entered an order for Judgment of foreclosure and sale in the aforementioned debt collection foreclosure action in favor of BANA through attorneys SDB, more than: (i) two years from the July 7, 2015 correspondence by mail from BANA to Mr. Campbell wherein the Defendant admitted that servicing for the 1st mortgage loan was being transferred to Seneca effective July 26, 2015; and (ii) one year from March 22, 2016 when Defendants BANA, Selene, and or US Bank through their non-party affiliate OFG used the mail and or wire to create and cause the Westchester County Clerk to record two void ab initio – forged – falsely acknowledged instruments titled "ASSIGNMENT OF MORTGAGE" wherein US Bank as Trustee of SW REMIC Trust 2015 is declared the last assignee of the fraud in factum 1st mortgage loan in dispute as of August 6, 2015.

36.     On December 13, 2017, confused and deeply concerned about losing the subject property which would have resulted in the Plaintiff, his non-party spouse, and other occupants of the subject property becoming homeless, Mr. Campbell commenced the first of two Chapter 13 bankruptcy proceedings by petitions filed in the United States Bankruptcy Court for the Southern District of New York,[46] wherein Selene as the purported servicing agent for US Bank as Trustee of SW REMIC Trust 2015 through Defendant SDB made an appearance in the case that was eventually terminated on March 19, 2018. On May 14, 2018, Mr. Campbell filed a second Chapter 13 petition in the U.S. Bankruptcy Court,[47] for which Selene as the purported servicing agent for US Bank as Trustee of SW REMIC Trust 2015 through Defendants SDB filed a proof of claim in the matter on July 13, 2018 and annexed thereto in support:

---

[46] See Case No. 17-23923-rdd (terminated Mar. 19, 2018);

[47] See Case No. 18-22679-rdd (dismissed on Sept. 17, 2018).

a. the aforementioned void *ab initio* – forged – falsely acknowledged instrument titled "ASSIGNMENT OF MORTGAGE" which Defendant BANA used the mail and or wire to create and record with the Westchester County Clerk on July 24, 2012, wherein BANA misrepresented MERS as the purported nominee for the non-existing entity ABC to be the "assignor" of the 1st mortgage loan and BANA as the "assignee" of the same on July 9, 2012.;

b. the aforementioned void *ab initio* – forged – falsely acknowledged instrument titled "ASSIGNMENT OF MORTGAGE" which Defendants BANA, Selene, and or US Bank through their non-party affiliate OFG of Southlake, TX, used the mail and or wire to create and cause the Westchester County Clerk to record on March 22, 2016, wherein (i) BANA through its purported attorney in fact OFG (without evidence of a power of attorney), is misrepresented to be the assignor of the 1st mortgage and SW Sponsor located at 1290 Avenue of the Americas, 34th Floor, NY, NY 10104 is misrepresented to be the "assignee" of the same on August 6, 2015 when, at all relevant times, BANA never owned, possessed, or had a legal right to enforce the fraud *in factum* 1st mortgage loan; (ii) there is no mention of when and how the 1st note was transferred, and; (iii) the instrument displays imposters, forgeries, and false notarizations.;

c. the aforementioned void ab initio – forged – falsely acknowledged instrument titled "ASSIGNMENT OF MORTGAGE" which Defendants BANA, Selene, and or US Bank through their non-party affiliate OFG of Southlake, TX, used the mail and or wire to create and cause the Westchester County Clerk to record on March 22, 2016, wherein (i) SW Sponsor is misrepresented to be the assignor

of the 1st mortgage and US Bank as Trustee for SW REMIC Trust 2015 c/o Seneca is misrepresented to be the assignee of the same on August 6, 2015 when, at all relevant times, SW Sponsor never owned, possessed, or had a legal right to enforce the fraud *in factum* 1st mortgage loan; (ii) there is no mention if when and how the 1st note was transferred; and (iii) the instrument displays imposters, forgeries, and false notarizations.; and

d.   a note instrument similar to the version filed on December 22, 2015 in the State Court debt collection action by attorneys SDB, presented to as a true copy of the original 1st note signed by Mr. Campbell on November 17, 2006, wherein the last page displays three undated stamps presented to be original signatures and indorsements by: (i) Ryan Criscione as a purported "Asst. Secretary" for the non-existing entity ABC, and paid to the order of Countrywide Bank, N.A.; (ii) Laurie Meder as a purported "Senior Vice President" for Countrywide Bank, N.A., and paid to the order of CHL; and (ii) Michele Sjolander as a purported "Executive Vice President" for CHL, and paid to the order of in blank ("_____").

37.     Hence, it is indisputable fact that the aforementioned proof of claim submitted in Mr. Campbell's last Chapter 13 bankruptcy matter on July 13, 2018 by Selene as the alleged agent for US Bank as Trustee of SW REMIC Trust 2015 and Defendant SDB, omitted and concealed from the court the aforementioned void *ab initio* – forged – falsely acknowledged instruments titled "CORRECTION ASSIGNMENT OF MORTGAGE" and "ASSIGNMENT OF MORTGAGE" that BANA created and caused the Westchester County Clerk to record on March 24, 2015 using the mail and or wire wherein CHL is misrepresented to be the "assignee" of the 1st

mortgage in dispute (without mention of when and how the note was transferred) on January 14, 2015, and BANA is declared the "assignee" of the same (without mention of when and how the note was transferred) on March 13, 2015. The Plaintiff further avers that Defendants CHLS, CHL, BAC, BANA, SDB, Selene, and US Bank knew or should have known that the note instrument filed with the State Court debt collection action by SDB on December 22, 2015 misrepresenting itself to be counsel for BANA, and the US Bankruptcy Court on July 13, 2018 by Selene and SDB in the name of US Bank as Trustee of SW REMIC Trust 2015, is a counterfeit instrument and displays defective – forged stamps presented as indorsements starting with the alleged signature of Michele Sjolander displayed upon the purported indorsement in blank by CHL is not an original signature and unauthorized (at best)[48] based upon her own admissions made under oath and penalty for perjury during depositions on March 14, 2012 in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida (Case No.: 09-21198CA09), wherein Michele Sjolander declared that she never stamped or personally signed any indorsements onto promissory notes (Id. at Page 45 / Lines 19-25, Page 46 / Lines 1-16).

38.    On October 30, 2018, Defendant BANA used the wire to fax Mr. Campbell a purported "true copy" of the original 1st note in dispute signed by the Plaintiff on November 17, 2006, wherein there is only one undated stamp presented to be an indorsement in blank by the non-existing entity ABC, not the three undated stamps displayed upon the instrument submitted to the State Court debt collection action by Defendant SDB on December 22, 2015 using the mail and or

---

[48] See NY UCC § 3-308, stating in relevant part that: "a. In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature....".

wire, and the US Bankruptcy Court on July 13, 2018 by Selene and SDB in the name of US Bank

as Trustee of SW REMIC Trust 2015 by wire, images of which are provided immediately below:

**Note Instrument with 3 undated stamps submitted to the Supreme Court of New York on December 22, 2015 in the name of BANA by attorneys SDB, and to the US Bankruptcy Court by Selene in the name of US Bank as Trustee of SW REMIC Trust 2015 on July 13, 2018**

**Note Instrument with 1 undated stamp faxed to the Defendant by BANA on October 30, 2018**



Furthermore, during a recorded telephone conversation between Mr. Campbell and a

representative for Defendant BANA on October 30, 2018, BANA declared that Fannie Mae, not

CHL or BANA, was at all relevant times the owner of the fraud in factum 1st mortgage loan in

dispute, an assertion that is also reflected on the MERS® Servicer ID (last checked by Plaintiff on

June 24, 2018), and omitted from the State Court debt collection action by Defendants CHLS,

CHL, BAC, BANA, RRA, and SDB.

  39.  On November 19, 2018, Defendant SDB through Judith Reardon, Esq. as Referee

conducted an unlawful – void *ab initio* sale of the subject property wherein US Bank as Trustee of

SW REMIC Trust 2015 was the successful bidder: (i) without US Bank as Trustee of SW REMIC

Trust 2015 ever being substituted as a Plaintiff in the aforementioned illegal State Court debt

collection action.; (ii) without US Bank as Trustee of SW REMIC Trust 2015 taking ownership or possession of the fraud in factum "mortgage loan" in dispute.; and (iii) in violation of GBL § 130(9)'s prohibition against a person in violation of General Business Law § 130(1) maintaining any action or proceeding in any court in this state on any contract, account, or transaction, bars plaintiff from asserting any claims, including equitable claims. See the opinion and order entered on October 30, 2018 by the Appellate Division, First Department in <u>Robert v Ringerjeans, LLC,</u> 2018 NY Slip Op 07272 affirming the June 25, 2018 order from the Supreme Court, New York County dismissing a Plaintiff's complaint based upon a contract in violation of NYCL GBL § 130.

40.     To present date, the Plaintiff lives in constant fear of being unlawfully evicted from his home that he shares with his spouse, while tenant occupying the subject property are constantly being instructed (unlawfully) by the agents of Selene to vacate the premises subject to the aforementioned fraud in factum – illegal mortgage loan and an unlawful debt collection foreclosure action that was initiated and prosecuted by Defendants CHL, CHLS, BAC, BANA, RRA, and SDB by tampering with and fabricating evidence, and using the mail and wire.

41.     Furthermore, to present date, Mr. Campbell has yet to receive a "Notice of Sale / Assignment of Loan" communication from Defendants CHLS, CHL, BAC, BANA, Fannie Mae, non-party Seneca, Selene, US Bank as Trustee of SW REMIC Trust 2015, RRA, SDB, or any other party asserting to be the "new creditor" asserting ownership and or possession of the fraud in factum 1st and 2nd "mortgage loans" in dispute as required by 15 U.S.C. § 1641(g).

## CAUSES OF ACTION

### COUNT ONE – AGAINST ALL DEFENDANTS
### VIOLATIONS OF FEDERAL CIVIL RICO (18 USC §1962(C)); ACTIONABLE PURSUANT TO 18 USC § 1964(C);

42.     The Plaintiff adopts the factual allegations set forth above in ¶¶1-41 as though fully set forth herein by reference.

43.     The Defendants designated in count one (1) constitute an "Enterprise" as defined in 18 U.S.C. §1961(4).

44.     The enterprise and or enterprises have an existence apart from and beyond the racketeering activity complained of in this action.

45.     The Defendants designated in count one (1) as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, violated the Federal Civil RICO statutes by conducting or participating, directly or indirectly, in the conduct of the affairs of an enterprise or enterprises, through a pattern of racketeering activity in violation of and 18 U.S.C. §1962(c).

46.     The acts by the Defendants designated in count one (1) constitutes a pattern of racketeering activity that has continued and escalated beginning in or around November 17, 2006 and continues to present date.

47.     The acts by the defendants designated in count one (1) as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes prohibited activities in violation of 18 U.S.C. §1962(c) for the Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which they have participated as a principal within the meaning of 18 U.S.C. §1961(6) to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities

of which affect trade or commerce.

48.     The acts by the Defendants as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes mail fraud in violation of 18 U.S.C. §1341 for the defendants devised a scheme to defraud, obtain money, or the subject property by means of false or fraudulent pretenses, representations, or promises, to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use counterfeit obligations, securities, for the purpose of executing such scheme or artifice, placed in post offices or authorized depository for mail matter, to be sent or delivered by the Postal Service, deposited, or caused to be deposited, to be sent or delivered by private or commercial interstate carrier, or knowingly caused to be delivered by mail or such carrier.

49.     The acts by the Defendants as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes fictitious name in violation of 18 U.S.C. §1342 for the defendants, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341, or any other unlawful business, used or assumed, or requested others to be addressed by, fictitious, false, or assumed titles, or names, other than their own proper name.

50.     The acts by the Defendants as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes wire fraud in violation of 18 U.S.C. §1343 for the defendants devised or intended to devise a scheme or artifice to defraud, for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted by means of wire in interstate commerce, writings for the purpose of executing such scheme or artifice.

51.     The acts by the Defendants as set forth within ¶¶1-41 and re-stated herein as though

fully incorporated by reference, constitutes transportation of stolen goods, securities, moneys, and or articles used in counterfeiting in violation of 18 U.S.C. § 2314 for the defendants transported, transmitted, or transferred in interstate commerce, securities of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, and devised a scheme or artifice to defraud, for obtaining money or property from the Plaintiff by means of false or fraudulent pretenses, representations, or promises, transported or caused to be transported interstate in the execution or concealment of a scheme or artifice to defraud the Plaintiff of money or property having a value of $5,000 or more, with unlawful or fraudulent intent, transported in interstate commerce falsely made, forged, altered, or counterfeited securities knowing the same to have been falsely made, forged, altered, or counterfeited.

52. The acts by the Defendants as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes interference with commerce by threats or violence in violation of 18 U.S.C. § 1951 for the defendants have: (a) obstructed, delayed, or affected commerce by robbery or extortion or attempted or conspired so to do, or committed or threatened physical removal of Plaintiff from the subject property, and the taking of the subject property under color of official right.

53. The aforementioned acts by the Defendants as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes laundering of falsely made monetary instruments in violation of 18 U.S.C. § 1956 because the Defendants: (1) knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted or attempted to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with (i) the intent to promote the carrying on of specified unlawful activity; or (ii) the intent to engage in conduct constituting a violation of section 7201 or 7206 of

the Internal Revenue Code of 1986; or knowing that the transaction is designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law.

54. The acts by the Defendants as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 upon the Defendants knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity.

55. The acts by the Defendants as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes misprision of felony in violation of 18 U.S.C. § 4 for the defendants had knowledge of the actual commission of a felony cognizable by a court of the United States, and concealed said knowledge, and did not as soon as possible make known the same to some judge or other person in civil or authority under the United States.

56. The acts by Defendants Selene and US Bank in its individual capacity and as Trustee throughout Mr. Campbell's bankruptcy proceeding as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes concealment, false oaths and claims in violation of 18 U.S.C. § 152 because the Defendants: (1) knowingly and fraudulently made false oaths or accounts in or in relation to Mr. Campbell's case under title 11; (2) knowingly and fraudulently made false declarations or statements under penalty of perjury in or in relation to Mr. Campbell's case under title 11; (3) knowingly and fraudulently presented a false claim for proof against the estate of Mr. Campbell ; and (4) after the filing of Mr. Campbell's case under title 11 or in contemplation thereof, knowingly and fraudulently concealed, destroyed, mutilated, falsified,

or made false entries in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of Mr. Campbell .

57.    The acts by the Defendants Selene, SDB, and US Bank in its individual capacity and as Trustee throughout Mr. Campbell's bankruptcy proceeding as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes bankruptcy fraud in violation of 18 U.S.C. § 157 because the Defendants: devised or intended to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so, (1) filed documents in Mr. Campbell's proceeding under title 11; and (2) made a false or fraudulent representation, or claim concerning or in relation to Mr. Campbell's proceeding under title 11.

58.    The acts by the Defendants Selene, SDB, and US Bank in its individual capacity and as Trustee throughout Mr. Campbell's bankruptcy proceeding as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes alteration and falsification of records in bankruptcy in violation of 18 U.S.C. §1519 for the Defendants knowingly altered, concealed, covered up, falsified, and made false entries of record and documents, with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of the Plaintiff's case filed under title 11.

59.    The acts by the Defendants as set forth within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes conspiracy against rights in violation of 18 U.S.C. § 241 for the defendants conspired to injure, oppress, threaten, or intimidate the Plaintiff in the free exercise or enjoyment of rights or privilege secured to Plaintiff by the Constitution and laws of the United States, including but not limited to: (i) the right to contract; (ii) the right to own, maintain, and be secure in Plaintiff's property right from unlawful seizures; (iii) to be free of usury; and (iv)

due process under the law wherein the use of false evidence during official proceedings constitutes a deprivation of due process.

60.    The acts by Defendants BANA, BAC, CHLS, CHL, Selene, RRA, SDB, and US Bank in its individual capacity and as Trustee as set forth above within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes impersonation in violation of NY Penal Law § 190.25, upon the Defendants impersonating: (i) MERS as a "mortgagee", "beneficiary", and "nominee" knowing otherwise to be true; (ii) ABC as the lender that suffered a real and ascertainable loss of $512,000.00 and $128,000.00 knowing otherwise to be true because, at all relevant times, ABC was not an official entity.; (iii) affixing the names and alleged signatures of individuals upon five void *ab initio* – forged – falsely acknowledged instruments titled "ASSIGNMENT OF MORTGAGE" and or "CORRECTION ASSIGNMENT OF MORTGAGE" that were recorded by the Westchester County Clerk on July 24, 2012, March 24, 2015, and March 22, 2016, wherein those persons lacked the capacities claimed within the instrument, along with knowledge as to the character, legality, ownership, and possession of the 1st mortgage loan in dispute.; (iv) affixing the names and or stamps of individuals upon the aforementioned note instruments filed with the State Court in the name of BANA on December 22, 2015, filed with the US Bankruptcy Court by Selene and US Bank on July 13, 2018, and faxed to Mr. Campbell by BANA on Oct. 30, 2018, wherein those persons lacked the capacities claimed within the instrument, along with knowledge as to the character, legality, ownership, and possession of the 1st mortgage loan in dispute, to obtain a benefit or to injure or defraud Plaintiff.

61.    The aforementioned acts by Defendants BANA, BAC, CHLS, CHL, Selene, RRA, SDB, and US Bank in its individual capacity and as Trustee as set forth above within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes scheme to defraud in

violation of NY Penal Law § 190.60 upon the Defendants scheme constituting a systematic ongoing course of conduct with intent to defraud the Plaintiff to obtain property by false or fraudulent pretenses, representations or promises, and so obtained property.

62.    The aforementioned acts by Defendants BANA, BAC, CHLS, CHL, Selene, RRA, SDB, and US Bank in its individual capacity and as Trustee as set forth above within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes forgery in violation of NY Penal Law § 170.05 for the Defendants intended to defraud, deceive, and/or injure the Plaintiff by falsely making, completing or altering the aforementioned instrument complained of herein.

63.    The aforementioned acts by Defendants BANA, BAC, CHLS, CHL, Selene, RRA, SDB, and US Bank in its individual capacity and as Trustee as set forth above within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes forgery in violation of NY Penal Law § 170.10 for the Defendants with intent to defraud, deceived and/or injured the Plaintiff by falsely making, completing and/or altering the instruments complained of herein.

64.    The aforementioned acts by Defendants BANA, BAC, CHLS, CHL, Selene, RRA, SDB, and US Bank in its individual capacity and as Trustee as set forth above within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes possession of forged instruments in violation of NY Penal Law § 170.20 for the Defendants, with knowledge that the aforementioned instruments complained of herein are forged and with intent to defraud, deceive and/or injured the Plaintiffs, uttered or possessed the forged instruments complained of herein.

65.    The aforementioned acts by Defendants BANA, BAC, CHLS, CHL, Selene, RRA, SDB, and US Bank in its individual capacity and as Trustee as set forth above within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes possession of a forged instrument in violation of NY Penal Law § 170.25 for the Defendants, with knowledge that the

aforementioned instruments complained of herein are forged and with intent to defraud, deceive and/or injured the Plaintiff, the Defendants uttered or possessed the forged instruments complained of herein.

66.     The aforementioned acts by Defendants BANA, BAC, CHLS, CHL, Selene, RRA, SDB, and US Bank in its individual capacity and as Trustee as set forth above within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes fraudulently obtaining signatures in violation of NY Penal Law § 165.20 wherein the Defendants, with intent to defraud or injure the Plaintiff, obtained the signatures of persons to written instruments by means of misrepresentations of fact which the Defendants knew to be false.

67.     The aforementioned acts by Defendants BANA, BAC, CHLS, CHL, Selene, RRA, SDB, and US Bank in its individual capacity and as Trustee as set forth above within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes offering a false instrument for filing in violation of NY Penal Law § 175.35 wherein the Defendants, knowing that the aforementioned written instruments contained false statements or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, the Defendants presented the false instruments to public offices, public servants, or public authority(s) with the knowledge or belief that the false instruments would be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, or public.

68.     The aforementioned acts by Defendants BANA, BAC, CHLS, CHL, Selene, RRA, SDB, and US Bank in its individual capacity and as Trustee as set forth above within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes tampering with physical evidence in violation of NY Penal Law § 215.40 wherein the Defendants, with intent that the

aforementioned instruments be used or introduced in an official proceeding or a prospective official proceeding,: (a) knowingly made, devised or prepared false physical evidence, or (b) produced or offered such evidence at such a proceeding knowing it to be false; or believing that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, the Defendants suppressed it by acts of concealment, alteration or destruction.

69.   The aforementioned acts by Defendants BANA, BAC, CHLS, CHL, Selene, RRA, SDB, and US Bank in its individual capacity and as Trustee as set forth above within ¶¶1-41 and re-stated herein as though fully incorporated by reference, constitutes tampering with public records in violation of NY Penal Law § 175.25 wherein the Defendants, knowing that they did not have the authority of anyone entitled to grant it, and with intent to defraud, knowingly made false entries in any record or other written instruments filed with, deposited in, or otherwise constituting a record of a public office or public servant.

70.   The Plaintiff avers that the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff.

71.   The acts by the Defendants violates 18 USC §1962(c)) and has caused injury to the Plaintiff as contemplated by 18 USC § 1964(c), in actual damages of emotional distress, loss of monies paid by the Plaintiff towards the fraud in factum "mortgage transaction", and other costs to defend the Plaintiff's property.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff request that this Court enter judgment in his favor and against Defendants, as follows:

    a.    Awarding Plaintiff actual damages against Defendants;

    b.    Awarding Plaintiff damages for emotional distress against Defendants;

    c.    Awarding Plaintiff attorneys' fees and costs against Defendants;

    d.    Awarding Plaintiff punitive damages against Defendants;

    e.    Awarding Plaintiff treble damages against Defendants

    f.    Imposing any other appropriate monetary sanctions against Defendants; and

    g.    Any other relief that this Court deems just and proper.

## COUNT TWO – AGAINST ALL DEFENDANTS
### VIOLATION OF NYCL GBL § 349;
### ACTIONABLE PURSUANT TO NYCL GBL § 349(h);

72.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-41 and Count One as though incorporated herein by reference.

73.    The Defendants designated in Count Two have each used or caused to be employed by other persons unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and knowingly concealed, suppressed, and omitted material facts with intent that the Plaintiff rely upon such concealment, suppression or omission, in connection with the "origination" of the "mortgage transaction' in dispute.

74.    The Plaintiff avers the unfair, deceptive, and unlawful practices by the Defendants misled and deceived Mr. Campbell , resulting in damages thereby, constituting unlawful practices in violation of NYCL GBL § 349, and has caused injury to Plaintiff as contemplated by NYCL GBL § 349 et seq. in actual damages of emotional distress, loss of monies paid towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

75.    The actions of the Defendants, individually and/or jointly, were performed in direct contradiction to their promises of superior services and conduct, but instead for their own financial self-interests, in detriment to the rights and position of the Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff request that this Court enter judgment in their favor and against

Defendants, as follows:

- a.   Awarding Plaintiff actual damages against Defendants;
- b.   Awarding Plaintiff damages for emotional distress against Defendants;
- c.   Awarding Plaintiff attorneys' fees and costs against Defendants;
- d.   Awarding Plaintiff punitive damages against Defendants;
- e.   Awarding Plaintiff treble damages against Defendants;
- f.   Imposing any other appropriate monetary sanctions against Defendants; and
- g.   Any other relief that this Court deems just and proper.

## COUNT THREE – AGAINST DEFENDANTS BANA, BAC, CHLS, CHL, SELENE, RRA, SDB, AND US BANK IN ITS INDIVIDUAL CAPACITY AND AS TRUSTEE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT PURSUANT TO 15 U.S.C. §1692; ACTIONABLE PURSUANT TO 15 U.S.C. §1692K;

76.     The Plaintiff adopts the factual allegations set forth above in ¶¶1-41 along with

Counts One through Two, as though fully incorporated herein by reference.

77.     The Defendants designated in Count Three have each acted in the capacity of debt

collectors for the fraud in factum "mortgage loan" in dispute as defined by the FDCPA, none of

the Defendants have evidence of being a creditor for the "mortgage loan" to be immunized of

liability under the FDCPA, and each Defendant has: (i) made false representations of the character,

amount, and legal status of the debt in dispute, and the services rendered or compensation which

may be lawfully received by the defendants as debt collectors for the collection of the debt in

dispute; (ii) made the representation or implication that nonpayment of the debt in dispute will

result in the sale of the subject property; and (iii) used false representations and deceptive means

to collect or attempt to collect the debt in dispute by willfully misrepresenting the non-official

entity ABC as the actual lender that suffered a loss of $512,000.00 and $128,000.00 and

misrepresented CHL, BANA, and US Bank as Trustee of SW REMIC Trust 2015 as the "owners

and holders" of the fraud in factum obligation in dispute, knowing otherwise to be true.

54

78.     The Plaintiff avers that the unlawful debt collection practices by the Defendants

constitutes false and misleading representations in violation of the FDCPA and has caused injury

to the Plaintiff as contemplated by 15 U.S.C. §1692 et seq., in actual damages of emotional distress,

loss of monies paid by Mr. Campbell towards a fraud *in factum* debt, and other costs to defend the

Plaintiff's property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against

Defendants, as follows:

   a. Awarding Plaintiff actual damages against Defendants;
   b. Awarding Plaintiff damages for emotional distress against Defendants;
   c. Awarding Plaintiff attorneys' fees and costs against Defendants;
   d. Awarding Plaintiff punitive damages against Defendants;
   e. Imposing any other appropriate monetary sanctions against Defendants; and
   f. Any other relief that this Court deems just and proper.

## COUNT FOUR – AGAINST BANA, BAC, CHLS, and CHL
### CONTINUAL ACTS OF FRAUD

79.     The Plaintiff adopts the factual allegations set forth above in ¶¶1-41 along with

Counts One through Three as though fully incorporated herein by reference.

80.     On April 13, 2011, a consent order was entered by Federal Authorities in <u>In the

Matter of Bank of America, N.A. (Order No.: AA-EC-11-12)</u>, prohibiting Defendant BANA and

its affiliate companies from further engagement in unfair, deceptive, unlawful, unsound, and

unsafe servicing and foreclosure practices, and requiring the Defendant to identify and correct

harms caused to consumers.

81.     On April 13, 2011, a consent order was entered by multiple Federal Agencies in <u>In

the Matter of: MERSCORP, Inc. and the Mortgage Electronic Registration Systems, Inc.</u> (OCC

No.AA-EC-11-20, Board of Governors, Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-

194b, OTS No. 11-040, FHFA No. EAP-11-01), prohibiting MERSCORP and its subsidiary MERS, along with MERSCORP's members including the Defendants named to Count Four, from further engagement in unfair, deceptive, and unlawful practices related to the foreclosure of residential "mortgage loans" including the creation of instruments asserting MERS through the latter's certifying officers transferred interest in "mortgage loans", and Article IX of the consent order required that, within ninety (90) days from the effective date of order, the MERSCORP Board to obtain an independent, external review of and recommendations regarding the eRegistry system of recording electronic notes.

82.      On April 4, 2012, Defendants BANA, BAC, CHLS, and CHL entered into a consent judgment with the United States of America represented by the DOJ, and the NY AG appearing on behalf of the Plaintiff and similarly situated persons, prohibiting further engagement and requiring remediation of the harms cited in the March 14, 2012 civil complaint in <u>United States of America, et.al. v. Bank of America N.A., et al.</u>, (Docket No. 1:12-cv-00361 RMC).

83.      As set forth above within ¶¶1-41 and re-stated herein as though fully incorporated by reference, the Defendants named herein to Count Four have willfully continued to engage in unsound and unsafe practices, along with unfair, deceptive, and unlawful servicing and foreclosure practices without remediating the earlier harm done to the Plaintiff, in violation of the aforementioned consent orders and consent judgments entered on April 13, 2011 and April 4, 2012.

84.      Hence, the Plaintiff asserts that the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff, and with disregard for the aforementioned April 13, 2011 consent orders and April 4, 2012 consent judgment.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against

the Defendants, as follows:

a.   Awarding Plaintiff actual damages against Defendant;
b.   Awarding Plaintiff damages for emotional distress against Defendant;
c.   Awarding Plaintiff attorneys' fees and costs against Defendant;
d.   Awarding Plaintiff punitive damages against each Defendant in the amount
     of $1,000,000.00 per violation and $5,000,000.00 each occurrence pursuant
     to the April 4, 2012 consent judgment in <u>United States of America, et.al. v.
     Bank of America N.A., et al., (Docket No. 1:12-cv-00361 RMC)</u>;
e.   Imposing any other appropriate monetary sanctions against Defendants; and
f.   Any other relief that this Court deems just and proper.

## <u>COUNT FIVE – AGAINST ALL DEFENDANTS</u>
## <u>UNJUST ENRICHMENT</u>

85.   The Plaintiff adopts the factual allegations set forth above in ¶¶1-41 along with

Counts One through Four, as though fully incorporated herein by reference.

86.   As a result of its misrepresentations underlying the fraud in factum 1st and 2nd

"mortgage loans" in dispute, together with the two aforementioned unlawfully converted -- forged

electronic notes that were (and remain) registered on the MERS® eRegistry, the Defendants have

been unjustly enriched at the expense of Plaintiff Paul Campbell.

87.   Further, it is clear that Defendants Selene using the name US Bank as Trustee of

SW REMIC Trust 2015, either through intentional actions or gross negligence, have taken title to

Plaintiff's house through an unlawful foreclosure debt collection action, a referee sale and,

accordingly, are attempting to receive a benefit, unjustly, through the ejecting Plaintiff and his

non-party spouse from his home by way of unlawful means and methods.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against

Defendants, as follows:

a.  Awarding Plaintiff actual damages against Defendants;
b.  Awarding Plaintiff damages for emotional distress against Defendants;
c.  Awarding Plaintiff attorneys' fees and costs against Defendants;
d.  Awarding Plaintiff punitive damages against Defendants;
e.  Imposing any other appropriate monetary sanctions against Defendants; and
f.  Any other relief that this Court deems just and proper.

## COUNT SIX – AGAINST DEFENDANTS BANA, BAC, CHLS, CHL, SELENE, RRA, SDB, AND US BANK IN ITS INDIVIDUAL CAPACITY AND AS TRUSTEE NEGLIGENT MISREPRESENTATION

88.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with Counts One through Five as though fully incorporated herein by reference.

89.    The Defendants to Count Six have each made negligent and false representations as to the character, legality, ownership, and possession of the "mortgage transaction" in dispute; without any reasonable ground for believing their representations to be true, with the intent to induce the Plaintiff into believing the defendant's representations, causing the Plaintiff to act upon as the defendant's desires, and causing injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by Mr. Campbell towards a fraud *in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

a.  Awarding Plaintiff actual damages against Defendants;
b.  Awarding Plaintiff damages for emotional distress against Defendants;
c.  Awarding Plaintiff attorneys' fees and costs against Defendants;
d.  Awarding Plaintiff punitive damages against Defendants;
e.  Imposing any other appropriate monetary sanctions against Defendants; and
f.  Any other relief that this Court deems just and proper.

## COUNT SEVEN – AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT

90.     The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with Counts One through Six as though fully incorporate herein by reference.

91.     The Defendants to Count Seven have each fraudulently concealed from the Plaintiff: (i) material facts underlying the character, legality, ownership, and possession of the "mortgage transaction" in dispute, (ii) with knowledge of the material facts, knowing material facts were not within reasonably diligent attention, observation, and judgment of the Plaintiff, (iii) while the defendants suppressed and or concealed the material facts with the intention that the Plaintiff be misled as to the character, legality, ownership, and possession of the "mortgage transaction" in dispute, (iv) the Plaintiff was reasonably so misled; and (v) causing injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

92.     The Defendants, collectively, have (and continue to) conceal from the Plaintiff the location of the two unlawfully converted – forged – stolen electronic notes that were illegally made part of the fraud in factum transactions in dispute.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

    a.     Awarding Plaintiff actual damages against Defendants;
    b.     Awarding Plaintiff damages for emotional distress against Defendants;
    c.     Awarding Plaintiff attorneys' fees and costs against Defendants;
    d.     Awarding Plaintiff punitive damages against Defendants;
    e.     Imposing any other appropriate monetary sanctions against Defendants; and
    f.     Any other relief that this Court deems just and proper.

59

## COUNT EIGHT – AGAINST DEFENDANTS BANA, BAC, CHLS, CHL, SELENE, RRA, SDB, AND US BANK IN ITS INDIVIDUAL CAPACITY AND AS TRUSTEE
### CONSTRUCTIVE FRAUD

93.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with Counts One through Seven as though fully incorporate herein by reference.

94.    The Defendants to Count Eight have each: (i) made false representations, (ii) as to the character, legality, ownership, and possession of the "mortgage transaction" in dispute, (iii) for the purpose of inducing the Plaintiff to reply on such representations, (iv) for which the Plaintiff justifiably relied, and (v) caused injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

      a.    Awarding Plaintiff actual damages against Defendants;
      b.    Awarding Plaintiff damages for emotional distress against Defendants;
      c.    Awarding Plaintiff attorneys' fees and costs against Defendants;
      d.    Awarding Plaintiff punitive damages against Defendants;
      e.    Imposing any other appropriate monetary sanctions against Defendants; and
      f.    Any other relief that this Court deems just and proper.

### COUNT NINE – AGAINST ALL DEFENDANTS
### CIVIL AIDING AND ABETTING FRAUD

95.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with Counts One through Eight as though fully incorporate herein by reference.

96.    The Defendants to Count have aided and abetted the unfair, deceptive, and unlawful practices by each defendant as a collective effort to unlawfully procure monies from the Plaintiff under the duress of an unlawful foreclosure debt collection action by employing false evidence to

conceal from the Plaintiff and the State Court of New York as it pertains to the true character, legality, ownership, and possession of the "mortgage transaction" in dispute.

97.     Defendants Selene and US Bank in its individual capacity and as Trustee for SW REMIC Trust 2015, at all relevant times, have aided and abetted the unlawful conduct previously committed by Defendants BANA, BAC, CHL, CHLS, RRA, SDB, and non-party to this complaint AHMS as the user of the non-existing entity ABC, by: (i) misrepresenting the true character, legality, ownership, and possession of the "mortgage transaction" in dispute; and (ii) uttering forged, falsely acknowledged, and or void *ab initio* instruments to give the impression of transfers of the "mortgage loan" loan in dispute.

98.     Defendant Fannie Mae, at all relevant times, aided and abetted the unlawful conduct of the other Defendants named in Count Nine, along with non-party to this complaint AHMS as the user of the non-existing entity ABC, by concealing Fannie Mae's ownership claim for the fraud in factum 1st mortgage loan reflected upon the MERS® eRegistry, without any paper trail documenting Fannie Mae's claims of ownership.

99.     The Plaintiff asserts the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff, and has caused injury to Mr. Campbell in actual damages of emotional distress, loss of monies paid by Mr. Campbell towards a *fraud in factum* "mortgage transaction", and other costs to defend Plaintiff's property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

a.  Awarding Plaintiff actual damages against Defendants;
b.  Awarding Plaintiff damages for emotional distress against Defendants;
c.  Awarding Plaintiff attorneys' fees and costs against Defendants;
d.  Awarding Plaintiff punitive damages against Defendants;
e.  Imposing any other appropriate monetary sanctions against Defendants; and
f.  Any other relief that this Court deems just and proper.

## COUNT TEN – AGAINST ALL DEFENDANTS
### WILLFUL AND WONTON GROSS NEGLIGENCE

100.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with Counts One through Nine as though fully incorporate herein by reference.

101.    The Defendants to Count Ten have engaged in willful and wonton unfair, deceptive, and unlawful practices as a collective effort to unlawfully procure monies from the Plaintiff under the duress of an unlawful foreclosure debt collection action by employing false evidence to conceal from the Plaintiff and the State Court of New York as it pertains to the true character, legality, ownership, and possession of the "mortgage transaction" in dispute.

102.    The Plaintiff asserts the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff, and has caused injury to Mr. Campbell in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

a.  Awarding Plaintiff actual damages against Defendants;
b.  Awarding Plaintiff damages for emotional distress against Defendants;
c.  Awarding Plaintiff attorneys' fees and costs against Defendants;
d.  Awarding Plaintiff punitive damages against Defendants;

e.    Imposing any other appropriate monetary sanctions against Defendants; and

f.    Any other relief that this Court deems just and proper.

## COUNT ELEVEN – AGAINST ALL DEFENDANTS
### CIVIL CONSPIRACY TO DEFRAUD

103.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with Counts One through Ten as though fully incorporate herein by reference.

104.    The Defendants BANA, BAC, CHL, CHLS, RRA, SDB, Selene, and US Bank in its individual capacity and as Trustee for SW REMIC Trust 2015, at all relevant times, have conspired together attempting to unlawfully procure monies from the Plaintiff under the duress of an unlawful foreclosure debt collection action by employing false evidence to conceal from the Plaintiff and the State Court of New York during official proceedings by: (i) misrepresenting the true character, legality, ownership, and possession of the "mortgage transaction" in dispute; (ii) presenting false certifications and communications as to the amount due; and (iii) uttering forged, falsely acknowledged, and or void *ab initio* instruments to give the impression of transfers of the "mortgage loan" loan in dispute.

105.    Defendant Fannie Mae, at all relevant times, conspired with the other Defendants named in Count Nine, along with non-party to this complaint AHMS as the user of the non-existing entity ABC, by concealing Fannie Mae's ownership claim for the fraud in factum 1st mortgage loan reflected upon the MERS® eRegistry, without any paper trail documenting Fannie Mae's claims of ownership.

106.    The Plaintiff asserts the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff, and has caused injury to Mr. Campbell in actual damages of emotional distress, loss of monies paid by the

63

Plaintiff towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

a.      Awarding Plaintiff actual damages against Defendants;
b.      Awarding Plaintiff damages for emotional distress against Defendants;
c.      Awarding Plaintiff attorneys' fees and costs against Defendants;
d.      Awarding Plaintiff punitive damages against Defendants;
e.      Imposing any other appropriate monetary sanctions against Defendants; and
f.      Any other relief that this Court deems just and proper.

## COUNT TWELVE – AGAINST DEFENDANTS BANA, CHL, US BANK IN ITS INDIVIDUAL CAPACITY AND AS TRUSTEE, and FANNIE MAE
### UNLAWFUL CONVERSION

107.      The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with Counts One through Eleven as though fully incorporate herein by reference.

108.      The Defendants to Count Twelve have, in one way or another, directly and or indirectly, asserted ownership of the fraud in factum 1st mortgage loan in dispute knowing the latter and the electronic note associated with the transaction, were the by-product of misrepresentations, omissions, concealment, and forgery because: (i) ABC was, at all relevant times, a non-existing entity and could not legally have been Mr. Campbell's lender; (ii) the original mortgage loan was, at all relevant times, an undisclosed securities transaction misrepresented to be a traditional mortgage loan; and (iii) the electronic note associated with the 1st mortgage loan was created by forging and Mr. Campbell's electronic signature.

109.      The Plaintiff asserts the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff, and has

caused injury to the Mr. Campbell in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

  a. Awarding Plaintiff actual damages against Defendants;
  b. Awarding Plaintiff damages for emotional distress against Defendants;
  c. Awarding Plaintiff attorneys' fees and costs against Defendants;
  d. Awarding Plaintiff punitive damages against Defendants;
  e. Imposing any other appropriate monetary sanctions against Defendants; and
  f. Any other relief that this Court deems just and proper.

## COUNT THIRTEEN – AGAINST DEFENDANTS BANA, BAC, CHLS, CHL, SELENE, RRA, SDB, AND US BANK IN ITS INDIVIDUAL CAPACITY AND AS TRUSTEE DEFAMATION

110. The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with Counts One through Twelve as though fully incorporate herein by reference.

111. At all times relevant herein, Defendants have published statements both orally and through writing to various credit reporting agencies, collection agencies, and/or attorneys that are false and negative representations concerning Mr. Campbell's credit information and history.

112. At a minimum, Defendants have published these statements each time Mr. Campbell has reached out to Defendants and each time other credit reporting agencies reached out to Defendant and each time a credit reporting agency has reinvestigated any dispute raised by Mr. Campbell, including but not limited to, the disputes identified herein.

113. The statements made by Defendants are false, as Mr. Campbell never actually defaulted on any debt stemming from the fraud in factum "mortgage loan" in dispute.

65

114.    Defendants have published these statements to a number of credit reporting agencies, including the three major credit bureaus.

115.    Defendants knew, or should have known, that the statements that it made were false when made and that it had no factual basis for making the statements that it did, as Mr. Campbell had notified Defendants that the statements were false for the aforementioned reasons and, nevertheless, Defendants continue to publish such statements up to and through the present time.

116.    The written statements and publications are libel per se.

117.    The oral statements and publications are slander per se.

118.    The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages, and harm the Plaintiff that are outlined more fully above and, as a result, Defendants are liable to compensate Mr. Campbell for the full amount of actual, compensatory, and punitive damages, as well as other such relief, as permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

   a.    Awarding Plaintiff actual damages against Defendants;
   b.    Awarding Plaintiff damages for emotional distress against Defendants;
   c.    Awarding Plaintiff attorneys' fees and costs against Defendants;
   d.    Imposing any other appropriate monetary sanctions against Defendants; and
   e.    Any other relief that this Court deems just and proper.

## COUNT FOURTEEN – AGAINST DEFENDANTS BANA, BAC, CHLS, CHL, SELENE, RRA, SDB, AND US BANK IN ITS INDIVIDUAL CAPACITY AND AS TRUSTEE HARASSMENT

119.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with Counts One through Thirteen as though fully incorporate herein by reference.

120.    The unfair, deceptive, and illegal practices by the Defendants in their theft of title to the subject property and extortion of monies from the Plaintiff towards the unlawful debt in dispute, constitutes harassment.

121.    The Plaintiff asserts the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause Plaintiff.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

    a.    Awarding Plaintiff actual damages against Defendants;
    b.    Awarding Plaintiff damages for emotional distress against Defendants;
    c.    Awarding Plaintiff attorneys' fees and costs against Defendants;
    d.    Awarding Plaintiff punitive damages against Defendants;
    e.    Imposing any other appropriate monetary sanctions against Defendants; and
    f.    Any other relief that this Court deems just and proper.

**COUNT FIFTEEN – AGAINST DEFENDANTS BANA, SELENE, AND US BANK IN ITS INDIVIDUAL CAPACITY AND AS TRUSTEE**
**SLANDER OF TITLE**

122.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with Counts One through Fourteen as though fully incorporate herein by reference.

123.    Defendant BANA, having no legal right to enforce the fraud in factum "mortgage loan" in dispute, willfully and with malicious intent, created and or caused to be recorded upon title to the subject property, four instruments titled "ASSIGNMENT OF MORTGAGE" and/or "CORRECTION ASSIGNMENT OF MORTGAGE" consisting of misrepresentations of fact, imposters and forgeries, and false acknowledgements to give the false impression as to transfers and assignments of the fraud in factum "mortgage loan" in dispute, rendering said instruments slanderous.

67

124.    Defendant Selene and US Bank in its individual capacity and as Trustee for SW REMIC Trust 2015 having no legal right to enforce the fraud in factum "mortgage loan" in dispute, willfully and with malicious intent, created and or caused to be recorded upon title to the subject property an instrument titled "ASSIGNMENT OF MORTGAGE" consisting of misrepresentations of fact, imposters and forgeries, and a false acknowledgement to give the false impression as to a transfer and assignment of the fraud in factum "mortgage loan" in dispute, rendering said instrument slanderous.

125.    The Plaintiff asserts the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause Mr. Campbell.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

a.    Awarding Plaintiff actual damages against Defendants;
b.    Awarding Plaintiff attorneys' fees and costs against Defendants;
c.    Awarding Plaintiff punitive damages against Defendants;
d.    Declaratory Relief deeming void the 1st of 5 recorded instruments titled "Assignment of Mortgage".;
e.    Declaratory Relief deeming void the 2nd of 5 recorded instruments titled "Corporate Assignment of Mortgage".;
f.    Declaratory Relief deeming void the 3rd of 5 recorded instruments titled "Corporate Assignment of Mortgage".;
g.    Declaratory Relief deeming void the 4th of 5 recorded instruments titled "Corporate Assignment of Mortgage".;
h.    Declaratory Relief deeming void the last of three recorded instruments titled "Assignment of Mortgage".;
i.    Imposing any other appropriate monetary sanctions against Defendants; and
j.    Any other relief that this Court deems just and proper.

68

## COUNT SIXTEEN – AGAINST ALL DEFENDANTS
### QUIET TITLE

126.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with Counts One through Fifteen as though fully incorporate herein by reference.

127.    There is a dispute as to whether Defendant US Bank in its individual capacity and as Trustee through its purported agent Defendant Selene, is legally entitled rights to the subject property based upon the Defendants referee sale held on November 19, 2018.

128.    Plaintiff seeks clarification of the validity or reach of the Defendant's alleged title in circumstances that otherwise preclude a forum for the resolution of such a dispute.

129.    At all times relevant hereto, the Defendants and other entities related to Defendants have claimed an interest and/or estate in the Property adverse to Plaintiff.

130.    Plaintiff, therefore, alleges that, upon information and belief, Defendant US Bank in its individual capacity and as Trustee through its purported agent Defendant Selene, does not hold a perfected and/or secured interest and/or claim in the Property and, as such, Defendants are estopped and precluded from asserting any claim against Plaintiff's estate.

131.    There is currently no other forum for an adjudication of the dispute herein and there are no other adequate remedies at law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendant, as follows:

a.    Awarding Plaintiff actual damages against Defendants;
b.    Awarding Plaintiff damages for emotional distress against Defendants;
c.    Awarding Plaintiff attorneys' fees and costs against Defendants;
d.    Awarding Plaintiff punitive damages against Defendants;
e.    Imposing any other appropriate monetary sanctions against Defendants; and
f.    Any other relief that this Court deems just and proper.

## COUNT SEVENTEEN
## DECLARATORY RELIEF PURSUANT TO NY UCC § 3-305

132.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with

Counts One through Sixteen as though fully incorporate herein by reference.

133.    The Plaintiff re-avers that the mortgage loan in dispute is the product of fraud *in*

*factum*, absence negligence on part of Mr. Campbell, and fraud *in factum* is a good defense even

against a holder in due course, a status of which none of the Defendants can claim and prove.

134.    As set forth within NY UCC § 3-305. Defenses and claims in recoupment, that

states in part, that: "(a) Except as otherwise provided in this section, the right to enforce the

obligation of a party to pay an instrument is subject to the following: (1) a defense of the obligor

based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack

of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of

the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor

reasonable opportunity to learn of its character or its essential terms,...".

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against

Defendants, as follows:

    a.    Voiding of the security instrument in dispute.
    b.    Voiding of the obligation in dispute.; and
    c.    Any other relief that this Court deems just and proper.

## COUNT EIGHTEEN – AGAINST DEFENDANTS SELENE AND US BANK IN ITS
## INDIVIDUAL CAPACITY AND AS TRUSTEE
## RELIEF PURSUANT TO NYCL GBL § 133

135.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-41, along with

Counts One through Seventeen as though fully incorporate herein by reference.

136.    As of the November 17, 2006 date assigned to the fraud in factum 1st and 2nd

70

mortgage loans in dispute, the Plaintiff was not aware and recently discovered that ABC as the party designated as the lender was not an official entity.

137.    Pursuant to NYCL GBL § 130: "1. No person shall hereafter (i) carry on or conduct or transact business in this state under any name or designation other than his or its real name, or (ii) carry on or conduct or transact business as a member of a partnership unless:...(b) Such person, if a corporation, limited partnership or limited liability company, shall file, together with the fees as set forth in subdivision five of this section, in the office of the secretary of state a certificate setting forth the name or designation under which business is carried on or conducted or transacted, its corporate, limited partnership or limited liability company name, the location including number and street, if any, of its principal place of business in the state, the name of each county in which it does business or intends to do business, and the location including number and street, if any of each place where it carries on or conducts or transacts business in this state.".

138.    Furthermore, NYCL GBL § 130(9) prohibits a person in violation of General Business Law § 130(1) maintaining any action or proceeding in any court in this state on any contract, account, or transaction, bars plaintiff from asserting any claims, including equitable claims."

139.    Pursuant to NYCL GBL § 133: "Whenever there shall be an actual or threatened violation of this section, an application may be made to a court or justice having jurisdiction to issue an injunction, upon notice to the defendant of not less than five days, to enjoin and restrain such actual or threatened violation: and if it shall appear to the satisfaction of the court or justice that the defendant is in fact assuming, adopting or using such name or is about to assume, adopt or use such name, and that the assumption, adoption or use of such name may deceive or mislead the public, an injunction may be issued by said court or justice, enjoining and restraining such

actual or threatened violation without requiring proof that any person has in fact been deceived or mislead thereby.".

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

a.  Prohibiting further efforts and attempts to enforce the 1st and 2nd mortgage loans created in violation of NYCL GBL § 130.;

b.  Permanently restraining and enjoining further civil actions attempting to dispose of and or remove Plaintiff and any other occupants from the subject property.;

c.  Permanently restraining and enjoining Defendants from attempting to transfer title of the subject property to a third-party.

d.  Any other relief that this Court deems just and proper.

## CLAIMS RESERVED

The Plaintiff herein reserves all claims against non-parties that are not designated Defendants in this matter, allowing the Plaintiff an opportunity to discover all relevant facts and any and all claims against the non-parties.

## EQUITABLE TOLLING

The Plaintiff herein invokes equitable tolling in order to preserve any and all claims recently discovered by Plaintiff, or if the conduct complained of herein is continuous.

Dated: December 31, 2018

Paul Campbell
420 South 4th Avenue
Mount Vernon, NY 10550
*"Plaintiff" (Pro Se)*